**UNITED STATES of America**

v.

**Anthony Frank PICCOLO, Appellant.**

**No. 87-5262.**

United States Court of Appeals, Third Circuit.

Argued Nov. 20, 1987.

Decided Dec. 21, 1987.

Rehearing and Rehearing En Banc Denied Feb. 2, 1988.

Donald F. Manno (argued), Cherry Hill, N.J., for appellant.

Marion Percell, Asst. U.S. Atty. (argued), Samuel A. Alito, Jr., U.S. Atty., Samuel P. Moulthrop, Chief, Appeals Div., U.S. Attorney's Office, Newark, N.J., for appellee.

Before SEITZ, HUTCHINSON and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Anthony Piccolo appeals a judgment of sentence. We have jurisdiction under 28 U.S.C. § 1291 (1982).

## I. FACTS

Piccolo was a participant in a commercial kickback scheme, the essential aspects of which were as follows. Delmarva Power and Light Company ("Delmarva Power") contracted with United Engineers & Constructors, Inc., ("United Engineers") for construction services. Timothy McCuen was employed by United Engineers as a purchasing agent. United Engineers planned to award a subcontract for some of the work on the Delmarva Power project. One of the bidders for this subcontract was Union Boiler Company ("Union Boiler"). After initially bidding and finding that it was the low bidder, Union Boiler learned from McCuen that it could increase its bid significantly and still retain its status as low bidder. Union Boiler increased its bid by $303,000, received the contract, and divided the extra money with McCuen and other participants.

Piccolo's role in this criminal scheme was to launder some of the kickback money. Piccolo caused his company, Baron Maintenance Service, Inc., ("Baron Maintenance") to issue an invoice in the amount of $32,000 to Union Boiler for painting services that it never performed. Union Boiler then issued a $32,000 check to Baron Maintenance, and Baron Maintenance in turn issued a check for some part of that amount to McCuen through a corporation that McCuen had set up for the sole purpose of laundering kickback money. For his efforts, Piccolo kept part of the money.

Following a jury trial, Piccolo was convicted of one count each of violation of the Travel Act, 18 U.S.C. § 1952 (1982) ("Count II"), mail fraud, 18 U.S.C. § 1341 (1982) ("Count III"), and conspiracy to commit either of these two substantive offenses, 18 U.S.C. § 371 (1982) ("Count I"). He was sentenced to two years' imprisonment on Count I. In addition, he received a suspended sentence and a term of probation on Counts II and III. This appeal followed.

## II. DISCUSSION

### A. *Mail Fraud*

Piccolo's most substantial argument for the reversal of his conviction on Counts I and III is that the jury instructions given by the district court permitted the jury to convict Piccolo for conduct outside the proscription of the mail fraud statute. Specifically, Piccolo contends that the jury was permitted to convict him of mail fraud if it found that he participated in a scheme to

defraud United Engineers of the company's intangible right to the honest and faithful services of its employee, McCuen, even if the object of wrongfully obtaining money or property was not part of the scheme. Relying on the Supreme Court's recent decision in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), Piccolo argues that a conviction based on such instructions must be reversed.

In *McNally*, the Court held that the "mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." *Id.* at 2879. Accordingly, the Court reversed McNally's conviction because the jury instructions at his trial permitted conviction for mail fraud based solely on a scheme to deprive the citizens of Kentucky of their intangible right to have state government conducted in an honest fashion.

Piccolo argues that the jury instructions at his trial were similarly flawed. He contends that his conviction must be reversed unless the instructions required the jury to find that the object of the scheme was to deprive another of money or property.

Because there was no timely objection to the jury instructions, our review is limited to an assessment of whether the instructions contained plain errors or defects affecting substantial rights. *See* Fed.R. Crim.P. 30, 52(b). We are satisfied that if, as Piccolo contends, the jury instructions allowed conviction for conduct outside the proscription of the mail fraud statute, such instructions would constitute both plain error and a defect affecting Piccolo's due process rights.

Piccolo bases his challenge to his conviction on one particular instruction rather than on the jury charge as a whole. The Supreme Court has noted that, when determining the effect of a single challenged instruction on the validity of a conviction, the reviewing court must view the challenged instruction in the context of the overall charge rather than in "artificial iso-lation." [1] *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (citing *Boyd v. United States,* 271 U.S. 104, 107, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926)). The Court further stated that

> a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

*Id.* We review the instructions given at Piccolo's trial in accordance with these guidelines.

In an initial summary of the offenses charged, the district court enumerated the allegations contained in the indictment. The court stated that the government alleged that the defendants "used and caused the mails to be used to further [a] scheme to defraud United Engineers and Delmarva Power and Light Company of money, and United Engineers of the honest and faithful services of Timothy McCuen."

Subsequently, in a detailed explanation of the nature of the offense of conspiracy, the district court referred to the alleged mail fraud scheme three times: 1) as a scheme to defraud United Engineers of its right to the honest and faithful services of its employee, Timothy McCuen, by paying him a bribe and to defraud United Engineers and Delmarva Power of $303,000; 2) as a scheme to defraud United Engineers and Delmarva Power; and 3) as a scheme to defraud United Engineers of its right to the honest, faithful and loyal services of its employee McCuen, and further to defraud both United Engineers and Delmarva Power of money. The plain meaning of these references would require the jury to find that an object of the scheme was to wrongfully obtain money or property before the jury could convict Piccolo of conspiracy to commit mail fraud.

---

1. It should also be noted that the district judge in this case instructed the jury to consider and apply each part of the instructions together with all of the other parts of the instructions.

With regard to the mail fraud count, the district court instructed the jury that there are three elements of mail fraud that the government must prove beyond a reasonable doubt in order to obtain a conviction. The first element of the statutory offense is that defendant devised a scheme to defraud or to wrongfully obtain money or property. Presumably to fulfill that requirement, the court instructed the jury that the first element in Piccolo's case was "that the defendant devised a scheme or artifice to defraud United Engineers of its right to the honest, faithful and loyal services of its employee, Timothy McCuen, and further, to defraud both United Engineers and Delmarva Power and Light Company of money." A plain reading of this instruction fairly compels the conclusion that Piccolo could be convicted of mail fraud only if the jury found that he participated in a scheme to defraud United Engineers and Delmarva Power of money.

Shortly after she set forth the three elements of mail fraud, the district judge gave the instruction upon which Piccolo bases his challenge to his conviction. The district judge stated that

> One aspect of the mail fraud scheme charged in [Count] 3 ... involves the defrauding of United Engineers of the honest and faithful services of its employee Timothy McCuen. The mail fraud statute prohibits any plan or course of action intended to deceive others and to deprive them of their right of the honest and faithful services of certain individuals who are obligated to provide such honest and faithful services.
>
> A scheme to deprive an employer of its right to the honest and faithful services of its employee can constitute a crime under the mail fraud statute.
>
> The right of any employer or other entity which engages a person to perform services to the faithful, honest and loyal, prudent services of that person is referred to as an intangible right. ...
>
> The fact [that such rights] are intangibles, however, does not necessarily mean that they are not valuable or they are not important.

Piccolo argues that *McNally* requires the reversal of his conviction because this portion of the instructions allowed the jury to convict him of mail fraud based solely on a finding that he participated in a scheme the sole purpose of which was to deprive United Engineers of its intangible right to the faithful services of McCuen.

■ Even if we assume that the above-quoted language was a misstatement of the law in the present context, we find that the jury could not, given the totality of the instructions, have convicted Piccolo unless it found that an object of the scheme in which he participated was to obtain money from Delmarva Power. In addition to consistently referring to the alleged scheme as one to, *inter alia*, defraud Delmarva Power of money, the district court clearly instructed the jury that, before it could convict Piccolo of mail fraud, it must find that the government proved beyond a reasonable doubt "that the defendant devised a scheme or artifice to defraud United Engineers of its right to the honest, faithful and loyal services of its employee, Timothy McCuen, *and further, to defraud both United Engineers and Delmarva Power and Light Company of money.*" Accordingly, we find no reversible error in the jury instructions given concerning mail fraud.

### B. *Travel Act*

■ Piccolo contends that his conviction on Count II must be reversed because the district court erred by instructing the jury that it could find Piccolo guilty of violating the Travel Act if it found that the object of his interstate travel was commercial bribery in violation of Pennsylvania law. Because there was no timely objection to the jury instructions, our review is again limited to an assessment of whether the instructions contained plain errors or defects affecting substantial rights. *See* Fed.R. Crim.P. 30, 52(b). We are satisfied that if, as Piccolo contends, the jury instructions allowed conviction for conduct outside the proscription of the Travel Act, such instructions would constitute both plain error and a defect affecting Piccolo's due process rights.

In light of *Perrin v. United States*, 444 U.S. 37, 50, 100 S.Ct. 311, 318, 62 L.Ed.2d 199 (1979) ("Congress intended 'bribery ... in violation of the laws of the State in which committed' as used in the Travel Act to encompass conduct in violation of state commercial bribery statutes."), Piccolo's contention is devoid of merit.

## C. *Evidentiary Matters*

Piccolo also raises a number of challenges to various evidentiary rulings made by the district court. We have reviewed these challenges and find that they either are without merit or do not rise to the level of reversible error.

## III. CONCLUSION

In light of the foregoing, the judgment of sentence will be affirmed.

ALDISERT, Circuit Judge, dissenting.

When Judge Thompson charged the jury in November 1986, the law appeared settled that proof of a scheme to deprive an employer, private or public, of its right to the honest and faithful services of its employee constituted a crime under the mail fraud statute. Thus, in the celebrated case involving the governor of Maryland, the Court of Appeals for the Fourth Circuit noted:

> At this late date, there can be no real contention that many schemes to defraud a state and its citizens of intangible rights, e.g., honest and faithful government, may not fall within the provision of the mail fraud statute.

*United States v. Mandel*, 591 F.2d 1347, 1362 (4th Cir.1979), *aff'd in relevant part*, 602 F.2d 653 (in banc), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

But seven months after Judge Thompson delivered her charge, the Supreme Court delivered a blockbusting opinion in *McNally v. United States*, —— U.S. ——, ——, 107 S.Ct. 2875, 2878, 97 L.Ed.2d 292 (1987), flatly rejecting the notion that "the mail fraud statute proscribes schemes to defraud citizens of their intangible rights to honest and impartial government." Instead, the Court decided that "[t]he mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." *Id.*

It is against the *McNally* teachings that we must weigh the jury instructions here. And unfortunately, we must require the trial judge to have been a soothsayer and, contrary to ruling case law of this court, to have predicted something, to use Learned Hand's felicitous phrase, in the womb of time but whose date of birth was not imminent. The district judge charged the jury as follows:

> One aspect of the mail fraud scheme charged in Counts 3 through 5 involves the defrauding of United Engineers of the honest and faithful services of its employee Timothy McCuen. The mail fraud statute prohibits any plan or course of action intended to deceive others and to deprive them of their right of the honest and faithful services of certain individuals who are obligated to provide such honest and faithful services.

App. at 606a.

Whatever had been the ruling case law at the time of trial, this definition of the crime of mail fraud is now clearly wrong, according to the gospel of *McNally*. The judge continued:

> A scheme to deprive an employer of its right to the honest and faithful services of its employee can constitute a crime under the mail fraud statute.

*Id.* But "No, no," said the Court in *McNally*. The judge then stated:

> The right of any employer or other entity which engages a person to perform services to the faithful, honest and loyal, prudent services of that person is referred to as an intangible right. Unlike money or other items of property with physical characteristics, intangible rights cannot be touched, held, seen or otherwise seen by the senses. Hence, we refer to them as intangibles.
>
> The fact they are intangibles, however, does not necessarily mean they are not valuable or they are not important. Un-

der such circumstances this right is said to incur on the part of an employee a fiduciary duty. The term fiduciary is derived from the Latin word meaning trust.

*Id.* But this is totally irrelevant to a prosecution under the mail fraud statute, said the Court in *McNally.* The instructions went further:

> You are instructed that if you find beyond a reasonable doubt that Timothy McCuen was an employee of United Engineers, that by virtue of his employment relationship and under Pennsylvania law ... he was under a duty as an employee to render his honest and faithful services to United Engineers.

*Id.* at 606a–07a. "So what does this have to do with the mail fraud statute?" poses the Court in *McNally.*

The trial court then made a comment that the government contends vitiated the incorrectness of the misstatements:

> Accordingly, you may find the existence of a scheme to defraud United Engineers of McCuen's honest and faithful services if you determine McCuen failed to disclose material information to United Engineers *and* the nondisclosure was capable of causing or actually did cause business harm to United Engineers.

*Id.* at 607a–08a (emphasis added). The Court earlier had charged that the government must prove beyond a reasonable doubt

> [t]hat the defendant devised a scheme or artifice to defraud United Engineers of its right to the honest[,] faithful and loyal services of its employee, Timothy McCuen; *and* further, to defraud both United Engineers and Delmarva Power and Light Company of money.

*Id.* at 605a (emphasis added).

I have purposely emphasized the word "and" in these two isolated segments because it is the presence of these two monosyllabic conjunctions in jury instructions that extended 53 pages that the government insists cured the recited defects that ran counter to *McNally* teachings. I do not agree that such an incantation has the power to resurrect the fatality. The incor-

rect definitions of the mail fraud crime form the blot of ink in a glass of milk. And the blot cannot be removed by chanting the word "and" twice in a 10,000–word jury instruction.

The appellant may be guilty of the crime of mail fraud. But that is not my task to decide. The executive branch of government has the duty to prosecute those who breach the rules of society. My job is to insure that society obeys its own rules in the prosecution process. It has not done so here.

Accordingly, I dissent and would reverse the mail fraud conviction and sentence, and remand for a new trial on the mail fraud counts only.