**UNITED STATES of America, Plaintiff,**

**v.**

**Herbert G. CASE, Jr., Defendant.**

**Crim. No. 82–200.**

United States District Court,
D. New Jersey.

April 5, 1988.

Samuel A. Alito, Jr., U.S. Atty. by Diane K. Weeks, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Walder, Sondak, Berkeley & Brogan, by Barry A. Kozyra, Michael J. Faul, Jr., Roseland, N.J., for defendant.

OPINION

DEBEVOISE, District Judge.

This is a motion pursuant to 28 U.S.C. Section 2255 to vacate and set aside defendant Herbert G. Case, Jr.'s conviction on one count charging conspiracy to commit mail fraud, 18 U.S.C. Section 371 (Count 1) and 15 counts charging mail fraud, 18 U.S.C. Section 1341. Defendant also proceeds by way of application for a writ of coram nobis. Defendant contends that he was indicted, tried and convicted on the basis of a definition of mail fraud which the United States Supreme Court rejected in *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

I. *United States v. McNally*

In *McNally* the Supreme Court rejected an interpretation of the mail fraud statute previously applied in many circuits and held that "[t]he mail fraud statute clearly protects property rights, but does not refer

to the intangible right of citizenry to good government." at ——, 107 S.Ct. at 2879, 97 L.Ed.2d at 299–300.

In that case defendants, who were either state officials or acting in league with state officials, prevailed upon the state's insurance agent in return for continuation of its agency to share the commission it received with other insurance agencies specified by defendants. Defendants had an interest in the agencies receiving the share of commissions and thus personally profited from the arrangement. The state did not pay any more for its insurance under this scheme. The insurance agency placing the state's insurance simply agreed to pay some of the commissions to which it was entitled to other insurance agencies.

The defendants were charged with, among other things, a scheme to defraud the citizens of the state to have the affairs of the state conducted honestly. The Court of Appeals affirmed judgments of conviction relying on cases holding that the mail fraud statute proscribes schemes to defraud citizens of their intangible right to honest and impartial government. It ruled that a public official has a fiduciary duty and that misuse of his office for private gain is a fraud.

The Supreme Court rejected that interpretation of the mail fraud statute and held that it only proscribes fraud which is aimed at causing a deprivation of money or property.

## II. *The Instant Case*

Defendant, two other individuals and their corporation, Scientific Chemical Processing, Inc. ("SCP") were indicted in 1982. The nub of the mail fraud conspiracy charge was:

[Defendants] did knowingly and wilfully ... conspire ... to devise and intend to devise a scheme and artifice to defraud the citizens of the State of New Jersey, the NJDEP and Passaic Valley [Sewerage Commissioners] ... as well as generators of industrial chemical wastes by means of false and fraudulent pretenses, representations and promises regarding the transportation, treatment, recovery and disposal of industrial chemical wastes and to utilize the mail for the purpose of executing this scheme and artifice.

Paragraphs 11–21 described in some detail the means by which the conspiracy was carried out. Representations were made to hazardous waste generators that defendants would dispose of their wastes in a lawful manner. Defendants obtained contracts and payments on the basis of such representations. Defendants received the generators' hazardous wastes and disposed of them unlawfully by dumping them into Hudson Bay through Passaic Valley's sewerage system and by dumping them into the Lone Pine Landfill which was not authorized to receive them. To conceal the illegal dumping into Hudson Bay defendants made false statements to Passaic Valley and to conceal the entire illegal dumping scheme and to prevent it from being stopped defendants submitted false reports to NJDEP and failed to issue the required Special Waste Manifests or submitted to NJDEP false Special Waste Manifests.

Counts 2 through 21 set forth the substantive acts of mail fraud in furtherance of the fraudulent scheme in which defendants had engaged. These included SCP's sending of false manifests (either on a special or quarterly basis) to NJDEP and fake invoices charging payment for the lawful disposition of wastes or increasing the amount of payments to be due for SCP's providing of such services or other statements to private generators to assure them of proper disposition of their industrial waste products.

The defendant moved with his co-defendants on October 14, 1982, to dismiss the indictment on the ground, among others, that the indictment did "not set forth what injury or deprivation or benefit was contemplated or occurred by reason of the purported artifice or scheme." (Defendants' Joint Brief, page 13). I denied the motion to dismiss the indictment for the reasons set forth in an oral opinion.

I concluded that the object of the conspiracy was "clearly alleged, which is namely to make false statements to induce generators and public entities to believe the de-

fendants were disposing of hazardous wastes legally, *all so that defendants could continue their business and continue to charge generators.* The object of the conspiracy is properly alleged." *United States v. Case,* No. 82–200, Tr. at 16 (D.N.J. Nov. 1, 1982).

As to the conspiracy to defraud the "citizens of New Jersey for unspecified tangible rights" as well as to deceive Passaic Valley, NJDEP, and the private generators, I compared and contrasted the two situations:

There is *a plain and direct nexus* between defendants and the three categories of entities which are alleged to have been the victims of the fraud: namely, the generators with whom defendants contracted, the Passaic Valley Sewerage Commission whose facilities it used to dispose of industrial wastes, and the DEP (NJDEP) from which SCP received its permit, which regulated SCP's operation and to which SCP reported after the hazardous waste manifest system went into effect.

I struck as "rhetorical surplusage," the government's allegations that the citizens of New Jersey were also defrauded. However, because the indictment charged two fraudulent schemes, I sustained the indictment as to the one which I did not strike.

... (I)f the indictment charged only the defendants conducted a fraudulent scheme, the object of which was to deprive the citizens of New Jersey of their right not to have the state water polluted in violation of the laws, the indictment might well be subject to dismissal under the principle of the *Margiotta* case.

However, the indictment also charges fraud on two governmental agencies and on generators of hazardous waste. Insofar as they are concerned, the indictment alleges a nexus between the defendants and the defrauded entities which supports a Section 1341 charge.

I instructed the government not to argue before the jury "fraud on the public as distinguished from fraud on public entities." An order was entered denying the relief sought, except as set forth above, on November 29, 1982.

At the trial commencing on January 25, 1983, the government presented very substantial evidence to the jury that defendant SCP and its officers had engaged in a fraudulent scheme at least since early 1977, and up to the latter part of 1978 to deprive their customers—companies such as Grumman and Allied Chemical—of the benefit of contractual bargains that SCP would transport and treat the companies' industrial chemical wastes in a manner prescribed by law. In addition, the government showed that SCP had engaged in the disposal of these wastes, an activity for which NJDEP (then the Solid Waste Administration) had not granted SCP a temporary operating authorization.

The fraud committed by the defendants occurred in roughly three phases: the dumping in the New York Harbor, the burying of drums at the Lone Pine Landfill, and the circumvention of the NJDEP manifest system. There is no need at this juncture to summarize the evidence.

I charged the jury concerning conspiracy and mail fraud.

With respect to the Count 1 conspiracy I informed the jury that the defendants were accused of having engaged in a conspiracy to defraud the NJDEP, the Passaic Valley Sewerage Commission, as well as generators of industrial wastes and to use the mails to effectuate the fraudulent scheme. I read to the jury paragraphs 10 through 21 of Count 1 which describe the conspiracy and fraudulent scheme in considerable detail.

After giving several general instructions about the law of conspiracy I charged that the government had to prove the existence of a particular conspiracy alleged in the indictment:

"The indictment charges a single conspiracy to defraud the New Jersey Department of Environmental Protection, the Passaic Valley Sewerage Commission, generators of industrial chemical waste, and to use the United States mails to execute a scheme to defraud. Whether there was one conspiracy as charged or no conspiracy or two or

more separate and independent conspiracies is a question of fact for you to determine.

"If you find the government has not proven beyond a reasonable doubt that the single conspiracy as alleged in Count 1 existed among all the accused, but, rather, two or more separate conspiracies existed, then you must acquit all defendants as to the conspiracy to commit mail fraud alleged in Count 1 of the indictment."

Further I charged that:

"The evidence in the case need not establish that all three entities, NJDEP, Passaic Valley and the generators were defrauded through the conspiracy. Rather, it is sufficient if you find beyond a reasonable doubt that a conspiracy to defraud any one of these three entities was knowingly formed, and that one or more of the means of the conspiracy described in the indictment were agreed upon to be used in an effort to accomplish some object of the conspiracy."

Turning to the charges relating to mail fraud, I instructed the jury that the first element of mail fraud was that a defendant knowingly and wilfully devised or participated in a scheme or artifice with intent to defraud by means of false pretenses, representations or promises.

I defined "scheme and artifice" as follows:

"The words 'scheme and artifice' as used in the mail fraud statute include any plan or course of action intended to deceive or defraud others and to obtain by false representations or promises, money or property from persons so deceived. With respect to public bodies or agencies, such as the NJDEP and the Passaic Valley Sewerage Commissioners, the words 'scheme and artifice' include any plan designed to fraudulently state material facts or deliberately conceal materials facts concerning a matter over which the body or agency has jurisdiction to act."

I defined "intent to defraud" as follows:

"To act with 'intent to defraud' means, as I have said before, to act knowingly and with specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self. Under the mail fraud statute, reckless indifference for the truth is also considered fraudulent."

I also gave a charge relating to the success of the scheme:

"The amount of money lost by an alleged victim or the amount of money gained by a defendant is irrelevant to the question of whether there was a scheme or artifice to defraud. Indeed the government is not required to prove that any person lost any money or that any person was not able to subsequently recover lost money. The gist of the offense charged in the indictment is a wilful misuse of the mails in carrying out or attempting to carry out a scheme to defraud as charged. The success or failure of the scheme is immaterial and it is not necessary to show that any person was in fact defrauded.

"You may, however, in determining if there was a scheme to defraud, consider whether any person was actually defrauded."

The jury returned a general verdict on March 21, 1983, finding defendant Case guilty of conspiracy (Count 1) and of 15 acts of mail fraud. The latter included five counts charging mailings of special or periodic manifests to NJDEP (Counts 2, 3, 19, 20 and 21) and ten counts charging mailings of invoices and other correspondence to SCP's hazardous waste customers (Counts 4, 7–12 and 15–17). None of the mailings concerned matters sent to Passaic Valley, although the fourth overt act charged in the indictment specified one mailing to Passaic Valley.

On May 23, 1983 I sentenced defendant to a term of imprisonment of 18 months (later reduced to one year) and a fine of $2,000 on Count 1, the conspiracy. I suspended sentence on the remaining counts on which he was convicted and placed defendant on probation for five years. Defendant was released from custody on May 26, 1986 and is presently serving a probationary term on the other counts of conviction.

### III. *The Government's Motion to Dismiss*

The government moves to dismiss defendant's motion to the extent that it relates to the conspiracy conviction on Count 1, contending that the Court lacks subject matter jurisdiction because defendant is no longer "in custody" for the purposes of 28 U.S.C. Section 2255.

As described above defendant has completed the term of imprisonment imposed for his Count 1 conviction. His probationary sentence was imposed for his conviction on the other counts. Relief under 28 U.S.C. Section 2255 is only available to "[a] prisoner in custody under sentence of a court." A person serving a term of probation may proceed under Section 2255, but no probationary term was imposed on Count 1. Thus defendant may not proceed under Section 2255 as to that count.

Recognizing this bar, defendant urges that his motion be treated as an application for a writ of error *coram nobis* with respect to the conspiracy. The coram nobis writ allows the Court to vacate its judgments "for errors of fact—in those cases where the errors [are] of the most fundamental character, that is, render the proceeding itself invalid." *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914). Further, mere moral stigma of a conviction will not suffice. An applicant must show that he is suffering some present adverse legal consequence from his prior conviction. *United States v. Cariola*, 323 F.2d 180, 182 (3d Cir.1963).

Defendant asserts that under New Jersey law the effect of his federal conviction is to disqualify him from voting and serving as a juror, N.J.S.A. 2C:51–3, N.J.S.A. 19:4–1, N.J.S.A. 19:34–4 and to disqualify him from holding certain elected public positions, N.J.Constit. Article 4, Section I. While New Jersey's voting disabilities do not continue after a person has served his prison term and completed any probationary period, N.J.S.A. 19:4–1 (1987 Pocket Part), the remaining disabilities are perhaps sufficient under the cases to permit him to seek issuance of the writ provided the errors complained of were sufficiently serious.

### IV. *McNally's Effect on the Conviction*

■ Defendant first argues that under *McNally* it was error to charge that "the government is not required to prove that any person lost any money or that any person was not able to subsequently recover lost money." This was the settled law of this Circuit prior to *McNally*. It was held that the actual success of a mail fraud scheme is immaterial and that the statutory offense is the devising of a scheme the purpose of which was to obtain money or property by false representations. *United States v. Pearlstein*, 576 F.2d 531, 542 (3d Cir.1978).

As I read *McNally*, it holds that under the mail fraud statute the scheme must involve tangible or intangible property rights. The intangible rights of the citizenry to good government as the subject of a scheme will not suffice. I do not read *McNally* as holding that in order to fall under the proscription of the mail fraud statute the scheme must not only involve money or property, but also that the scheme must be successful. *U.S. v. Bunnels*, 833 F.2d 1183 (6th Cir.1987). Thus defendant's first ground for relief is rejected.

Next defendant urges that the indictment, the trial and the jury instructions permitted the jury to convict defendant for conduct outside the proscription of the mail fraud statute. Specifically, defendant contends that the jury, like the *McNally* jury, was permitted to convict him of mail fraud if it found that he participated in a scheme to defraud either Passaic Valley or NJDEP of something other than money or property.

It is true that prior to *McNally* many courts permitted the conviction of corrupt politicians and others without finding a fraudulent scheme designed to effect a transfer of money or property. The Court permitted a mail fraud conviction upon a finding that the citizens had been defrauded of their intangible right to fair and honest government. *McNally* closed the door on that kind of charge. Defendant

urges that in the present case he was accused of both a permissible and impermissible mail fraud charge. The permissible charge was that defendants devised a fraudulent scheme designed to obtain payments from hazardous waste generators through the use of false representations that hazardous waste was disposed of legally. The impermissible charge was that defendants devised a scheme which, although it included false representations to the NJDEP and Passaic Valley, was not designed to obtain money and property from those entities. Since it cannot be known on which scheme the jury based its conviction, defendant argues, the judgment of conviction must be set aside. Dealing with a similar issue the Court of Appeals has stated that if "the jury instructions allowed convictions for conduct outside the proscription of the mail fraud statute, such instructions would constitute both plain error and a defect affecting [defendant's] due process rights." *United States v. Piccolo,* 835 F.2d 517, 519 (3d Cir.1987).

In *Piccolo* the Court's charge given before *McNally,* defined the mail fraud alleged in the indictment as using and causing "the mails to be used to further [a] scheme to defraud United Engineers and Delmarva Power and Light Company of money, and United Engineers of the honest and faithful services of Timothy McCuen." The Court of Appeals assumed that a scheme the sole purpose of which was to deprive United Engineers of its intangible right to the faithful services of McCuen would not state a mail fraud offense under *McNally.* Nevertheless, it found that the jury could not, given the totality of the instructions, have convicted Piccolo unless it found that an object of the scheme in which he participated was to obtain money from Delmarva Power.

■ I need not decide whether in the present case the mere submission of false information to Passaic Valley and to NJDEP for the purpose of continuing to illegally dump waste in the Passaic Valley sewer and for the purpose of continuing to illegally haul and dump hazardous waste would constitute a violation of the mail fraud statute. Such conduct is very different from the more nebulous deprivation of the intangible right to fair and honest government as in *McNally,* or the deprivation of the honest and faithful services of an employee as in *Piccolo.* By means of false representation in the present case defendants used facilities of Passaic Valley which they were not authorized to use and defendants operated under an NJDEP permit which, had the true facts been known, would have been revoked, or they operated without a proper permit when they should have had one. I am not at all convinced that *McNally* would exclude such conduct resulting in that kind of loss to Passaic Valley and NJDEP from the reach of the mail fraud statute.

However, that question need not be decided. The pretrial proceedings in this case, the trial itself and the jury instructions read as a whole, make it abundantly clear that a single scheme was charged and proved and that the scheme contemplated false representations to Passaic Valley, NJDEP and generators for the purpose of obtaining continued business and payments from the generators.

At the time of pretrial motions I struck the allegations of the indictment charging a conspiracy to defraud the citizens of the State of New Jersey of unspecified and intangible rights. I concluded that the object of the conspiracy was "to make false statements to induce generators and public entities to believe the defendants were disposing of hazardous wastes legally, all so that defendants could continue their business and continue to charge the generators."

The case was tried on that basis and overwhelming proofs were produced establishing the false statements to the three categories of entities, the illegal dumping, and the receipt of payment by defendants from the generators who relied on the statements given to them.

The charges specifically referred to the single scheme, and the portions of the indictment describing in detail the components of that scheme were read in full. The unitary scheme alleged was referred to

in the conspiracy portion of the charge and in the portion of the charges defining mail fraud.

The jury charges read in their entirety required the jury to find that the scheme and artifice to defraud included not only the plan intended to deceive, but also a plan intended to obtain by false representations money or property from the generators. The representations made to Passaic Valley and to NJDEP were a part of the overall scheme.

The verdict shows that of necessity the jury found that there existed a plan intended to obtain by false representations money or property. Not only was there a conviction on the conspiracy count and on the counts alleging mailings to NJDEP, but there was also a conviction on the counts alleging mailings to defendants' hazardous waste customers whose continued business and payments were the objects of the mail fraud scheme.

Thus I conclude that even if a scheme involving only misrepresentations to Passaic Valley and NJDEP for the sole purpose of influencing their action was not covered by the mail fraud statute, that was not the scheme alleged and proved in this case. The jury here could not have convicted defendant unless it found that an object of the conspiracy was to obtain contracts and money from the generators of hazardous waste.

Thus there has been no violation of the rules set forth in *McNally*. Defendant's motion for relief pursuant to 28 U.S.C. Section 2255 and for a writ of error coram nobis will be denied.

The government is requested to present an appropriate form of order.