UNITED STATES of America

v.

**Maurice S. OSSER, Appellant.**

No. 87–1635.

United States Court of Appeals,
Third Circuit.

Argued Oct. 31, 1988.

Decided Dec. 29, 1988.

Rehearing and Rehearing In Banc
Denied Jan. 24, 1989.

Jeremy T. Ross (argued), Neil E. Jokelson, Philadelphia, Pa., for appellant.

Frederick G. Herold (argued), Asst. U.S. Atty., Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Philadelphia, Pa., for appellee.

Before GIBBONS, Chief Judge, BECKER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Fifteen years after this petitioner was convicted of mail fraud, the Supreme Court held that the governing statute does not permit prosecution solely on the theory that a governmental official's wrongful conduct deprived the citizenry of his honest services. Petitioner then asked the district court to vacate his conviction in light of the Court's holding but was denied relief because he had failed to raise the issue on direct appeal. In addition, the district judge noted that the jury had been charged that it also could convict if it found that the kickbacks petitioner received had caused economic loss to the municipality that had employed him. We will affirm.

In 1972, petitioner Maurice Osser, a City Commissioner of Philadelphia, was convicted on seven counts of mail fraud, 18 U.S.C. §§ 1341, 2, one count of conspiracy to commit mail fraud, 18 U.S.C. § 371, and one count of obstruction of justice, 18 U.S.C. § 1510. The court imposed sentences of imprisonment and fines on the mail fraud counts, a concurrent sentence of imprisonment on the conspiracy count, along with a fine, and a consecutive prison sentence and fine on the obstruction of justice charge. The judgments were affirmed by this Court on direct appeal. *United States v. Osser*, 483 F.2d 727 (3d Cir.), *cert. denied*, 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973). Osser served his periods of incarceration and probation and has paid the fines.

In 1987, the Supreme Court decided in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), that the federal mail fraud statute did not reach schemes to deny the public its right to have governmental officials perform their duties honestly and impartially. "The mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." *Id.* at ——, 107 S.Ct. at 2879. In so deciding, the Court itself acknowledged that the Courts of Appeals had consistently interpreted the statute as proscribing schemes to defraud persons of their intangible rights. *Id.* at ——, 107 S.Ct. at 2880.

Armed with the *McNally* decision, Osser sought to vacate his conviction by petitioning for a writ of coram nobis from the same district judge who presided at his 1972 trial. Osser asserted that the jury had been erroneously charged that it could convict if the government proved that "the citizens of Philadelphia were defrauded out of the loyal and faithful services of an employee" and that it need not "show an actual monetary loss to the City." Arguing that the jury instructions invalidated his conviction, Osser contended that relief was due because he suffers collateral adverse consequences flowing from his conviction—possible impeachment as a witness, enhanced penalties for future convictions, and the denial of his city pension.

In reviewing the underlying conviction, the district court characterized the scheme as "a classic 'bid rigging' and 'kick-back'" arrangement in which two printing companies submitted collusive bids on the city's requests, ensuring that each firm would get certain contracts. In operation for fifteen years, the printers' secret agreement prevented actual competitive bidding. Osser, by virtue of his position as City Commissioner, was able to influence the selection of printing firms and, for his part in the annual scheme, received "commissions."

The trial record revealed that the jurors had been instructed on four separate postu-

lates that could lead to a conviction for mail fraud. One possibility was that the city had been defrauded of money in the form of "commissions" or kickbacks that Osser received; another was that the citizens of Philadelphia had been deprived of Osser's honest and impartial services.[1]

In denying Osser's petition, the district court observed that *McNally* proscribed only one of the two separate theories on which the mail fraud counts had been submitted to the jury; a conviction based on a monetary loss approach would still be valid. The court also noted that portions of the record were no longer available, that Osser had not raised the intangible rights issue either at trial or on direct appeal, and that he was not seeking to vacate the obstruction of justice conviction. Although the prosecution had presented "overwhelming evidence" to establish Osser's guilt in the 1972 trial, it was doubtful that, fifteen years later, the government would be able to present sufficient proof to allow the case to go to a jury. The district court observed that, in these circumstances, granting a new trial would create a "manifest injustice to the City of Philadelphia and its citizens."

On appeal, Osser argues that *McNally* is to be given retroactive effect and that because the issue of guilt was submitted to the jury on two theories, one of which was invalid, the conviction must be vacated. The government contends that the scheme established at trial had the inevitable result of causing property loss to the city, and hence, *McNally* does not affect the validity of the conviction. In addition, the govern-ment asserts that, because Osser had not previously contested the intangible rights theory, he is not now entitled to coram nobis relief.

## I.

The retroactivity of Supreme Court holdings in criminal cases has proved to be a troubling concept, particularly as applied to procedural rulings and prophylactic measures. *See, e.g., Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). *McNally* is of a different nature because it holds that certain misconduct does not fall within the proscription of the mail fraud statute and thus the decision goes to substance rather than procedure.[2]

A ruling that a trial court lacked power to convict a defendant for proven activity must necessarily be retroactive. The Supreme Court stated in *United States v. United States Coin & Currency,* 401 U.S. 715, 724, 91 S.Ct. 1041, 1046, 28 L.Ed. 2d 434 (1971), that "even the use of impeccable factfinding procedures could not legitimate a verdict" where "we have held that the conduct being penalized is constitutionally immune from punishment. No circumstances call more for the invocation of a rule of complete retroactivity." It follows that retroactivity must be given to *McNally* 's holding that a scheme depriving the citizenry of honest services of its local officials was, without more, not prohibited by the mail fraud act. *United States v.*

1. The judge read to the jury the relevant portion of the indictment, which charged that Osser "devised and intended to devise a scheme and artifice to defraud:

"a. The City of Philadelphia and its citizens of their right to the conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions, and performance of official duties of Maurice S. Osser in his capacity as City Commissioner of Philadelphia;

"b. The City of Philadelphia and its citizens of their right to have the City's business and its affairs conducted honestly, impartially, free from deceit, craft, trickery, corruption, fraud, undue influence, and conflict of interests;

"c. The City of Philadelphia out of secret monies obtained by Maurice S. Osser in the performance of his official duties as City Commissioner of the City of Philadelphia;

"d. The City of Philadelphia and its citizens of their right to have contracts for the printing of election ballots and material for the City Commissioners and the contacts for printing the official documents of City Council bid upon and awarded by free and competitive bids, without fraud and collusion."

2. Congress has since amended the mail fraud statute by adding, "the term 'scheme or artifice to defraud' includes the scheme or artifice to deprive another of the intangible right of honest services." Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7603, 102 Stat. 4181, 4508 (1988) (to be codified at 18 U.S.C. § 1346).

*Shelton,* 848 F.2d 1485, 1490 (10th Cir. 1988) (en banc) (habeas corpus proceeding). *See Davis v. U.S.,* 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974) (collateral attack allowed on basis of intervening change in substantive law).

■ The Court has also determined that a verdict of guilty based arguably on alternative premises, one of which is erroneous, cannot stand on direct appeal where it is impossible to ascertain on which ground the defendant was convicted. *Chiarella v. United States,* 445 U.S. 222, 237 n. 21, 100 S.Ct. 1108, 1119 n. 21, 63 L.Ed.2d 348 (1980); *Stromberg v. California,* 283 U.S. 359, 368, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931). *See United States v. Dansker,* 537 F.2d 40, 51 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

These general principles, however, are not dispositive of the issues present in the case at hand. Even though *McNally* is retroactive, it does not always require the vacation of a mail fraud conviction tinged with intangible rights aspects.

## II.

■ Osser seeks relief through the coram nobis route, a remedy reserved for exceptional circumstances. Coram nobis was available at common law in both the civil and criminal fields to correct errors of fact unknown to the court at time of the original judgment. Later, the writ was used to correct errors of law in criminal cases. *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). *See generally* Note, *The Writ of Error Coram Nobis in Civil Practice,* 20 Va.L.Rev. 423 (1933). The All Writs Act, 28 U.S.C. § 1651(a), incorporated coram nobis into federal practice.

Citing its earlier opinion in *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914), the Supreme Court in *Morgan* cautioned that coram nobis relief is limited to correct errors "of the most fundamental character." *Morgan,* 346 U.S. at 512, 74 S.Ct. at 253. "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right

of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Id.* at 511, 74 S.Ct. at 252.

We reiterated this point in *United States v. Cariola,* 323 F.2d 180, 184 (3d Cir.1963), stating, "[a]ny proceeding which is challenged by the writ is presumed to be correct and the burden rests on its assailant to show otherwise.... Relief will be granted only when circumstances compel such action 'to achieve justice.'" Consequently, the right to issuance of the writ is more restricted than that provided by direct appeal. *United States v. Gross,* 614 F.2d 365, 368 (3d Cir.) (per curiam), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980). Nevertheless, it appears to us that an assertion that a conviction was based on conduct not covered by a criminal statute class is of a "fundamental character." *See Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974).

Even so, other factors must be taken into account. The interest in finality of judgments is a weighty one that may not be casually disregarded. Where sentences have been served, the finality concept is of an overriding nature, more so than in other forms of collateral review such as habeas corpus, where a continuance of confinement could be manifestly unjust.

■ *Morgan* indicated that coram nobis relief is not available if a sentence has been executed unless the conviction carries continuing penalties. *Morgan,* 346 U.S. at 512–13, 74 S.Ct. at 253. The collateral consequences that must exist to justify coram nobis have been the subject of some discussion among the Courts of Appeals. For example, we noted in *Cariola* that the denial of the right to vote or the subsequent imposition of a sentence heavier than would otherwise have been appropriate represents a collateral legal disadvantage that survives the satisfaction of a sentence. *Cariola,* 323 F.2d at 182.

In *United States v. Keane,* 852 F.2d 199, 203 (7th Cir.1988), the Court of Appeals stated that the collateral consequences

must be unique to criminal convictions, for example, the loss of a license to practice law, or of the right to bear arms. However, the Court viewed a fine that had been paid as equivalent in reality to a money judgment in a civil case and, hence, not sufficient to sustain a coram nobis action. Damage to reputation is not enough. However, in *Hirabayashi v. United States*, 828 F.2d 591, 606 (9th Cir.1987), the Court seemed to adopt a presumption that "collateral consequences flow from any criminal conviction." In that case, the Court found the requirement was satisfied even on a misdemeanor.

Osser alleges that his mail fraud conviction has resulted in the denial of a pension from the City of Philadelphia but that the conviction for obstruction of justice has no such effect. We admit to some uncertainty that Osser has established the requisite showing of collateral consequences but the record on this issue is almost nonexistent and the government has conceded the point for purposes of the appeal. We are not completely satisfied that the prerequisites for coram nobis may be established by prosecutorial concession in this fashion. *See Mayer*, 235 U.S. at 70, 35 S.Ct. at 20. However, in view of the result we reach here, we will assume, without deciding, that Osser has established the loss of a pension and that it is a cognizable collateral consequence.[3]

■ There is, moreover, another factor that poses serious problems here. The gravamen of Osser's complaint is that the trial judge's instructions to the jury were incorrect in offering as an alternative ground for conviction a theory that was later invalidated by *McNally*. Yet as the government argues, Osser did not raise that point at trial nor on direct appeal.

Relief is no more readily granted in a collateral attack by habeas corpus than one using coram nobis. Indeed, the jurisdictional basis of habeas corpus is that the petitioner be "in custody," 28 U.S.C. § 2255, and the natural solicitude of the law to end expeditiously an unjust incarcer-

ation exerts a perhaps unacknowledged pressure for expansive review. In a coram nobis case, by contrast, where sentence has been served and nothing remains but some financial detriment, judicial incentive to excuse compliance with procedural prerequisites is of a lower order.

That is not to say, however, that substantial judicial constraints have not been observed in habeas corpus cases. In *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), the habeas corpus petitioner had failed to object to an allegedly faulty jury charge at trial and did not raise the issue on direct appeal. The Supreme Court refused to apply the "plain error" standard of Federal Rule of Criminal Procedure 52(b), stating that it was "out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal." *Id.* at 164, 102 S.Ct. at 1592. Reaffirming the consistently held rule that "[a] collateral challenge may not do service for an appeal," the Court continued, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* at 165, 102 S.Ct. at 1593 (quoting *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979)).

Similarly, in *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), the Court denied habeas corpus relief where the petitioners had failed to take direct appeals from their convictions. The Court rejected the petitioners' contention that appeals would have been futile, commenting that the situation was one "where at the time of the convictions the definitive ruling on the question of law had not crystallized." *Id.* at 181, 67 S.Ct. at 1592. Allowing collateral attacks in these situations would be inappropriate; the Court noted:

"If defendants who accept the judgment of conviction and do not appeal can later

---

**3.** We need not, and do not, decide here that the possibility of heavier punishment in the event of

a conviction in the future may be a cognizable collateral consequence.

renew their attack on the judgment by *habeas corpus*, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court."

*Id.* at 182, 67 S.Ct. at 1593.

Osser cites *United States v. Travers*, 514 F.2d 1171 (2d Cir.1974), where the Court of Appeals directed coram nobis relief for a petitioner whose direct appeal was based on an issue that the Supreme Court resolved in a contrary manner in a later case. Because the petitioner had properly exhausted the appellate process, he was entitled to the writ, and the Court "le[ft] to another day the determination of the proper result when less has been done." *Id.* at 1177.

Osser also cites *Ingber v. Enzor*, 841 F.2d 450 (2d Cir.1988), where habeas corpus relief was granted on a pre-*McNally* mail fraud conviction. That case, however, is substantially different from the one at hand. In *Ingber*, the trial took place in 1986. The Court of Appeals pointed out that by that time virtually every appellate decision for a decade had concluded that a scheme aimed at the deprivation of honest government came within the scope of the mail fraud statute, thus representing "entrenched precedent." In those circumstances, the Court held that to fault petitioner for failure to appeal on that ground would encourage appeals on even well settled law. *See also Reed v. Ross*, 468 U.S. 1, 17, 104 S.Ct. 2901, 2911, 82 L.Ed.2d 1 (1984) (habeas petitioner has cause for not raising an issue if there was no "reasonable basis upon which to develop [the] legal theory" and where subsequent Supreme Court decision overturned "a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved").

Osser's case is quite different. In 1972 when his trial took place and in 1973 when he appealed, deprivation of honest services as a basis for mail fraud was an open question in this circuit and nationally as well. It was not until 1982 in *United States v. Boffa*, 688 F.2d 919, 926 (3d Cir. 1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983), that this Court adopted that interpretation of the statute.

At the time of the Osser trial there was no "entrenched precedent" in this circuit or elsewhere in the United States. Whether the statute covered such conduct presented a live question, and was hotly contested by the defense in *United States v. States*, 488 F.2d 761 (8th Cir.1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974). Indeed, in that case the concurring judge was "reluctant" and voiced some doubt that Congress had intended such a sweeping view of the statute. By no means can it be said that an appeal on this point in 1973 would have been futile.

Just as the *Ingber* case points up the weakness in Osser's argument, so does *United States v. Sams*, 521 F.2d 421 (3d Cir.1975), on which he also relies. There, we reversed the district court's denial of coram nobis relief eleven years after the defendant had pleaded guilty to charges of failing to pay a federal wagering tax. In the interim, the Supreme Court had held that prosecution for violation of that statute encroached on the Fifth Amendment privilege against self incrimination. *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). Deciding that the guilty plea did not act as a waiver, we determined there was no longer a governmental interest in punishing the offender. Moreover, "[v]acating the plea ... does not present the United States with the arduous task of attempting, years after the trial would originally have taken place, to piece together a case for the prosecution." *Sams*, 521 F.2d at 426.

In the case presently before us, the district judge noted the difficulty the government would face were it required to go forward with a new trial. Parts of the record are missing, witnesses may well be unavailable, and the lapse of fifteen years

cannot but provide great difficulty. And in contrast to the *Sams* case, the remedy here would not be a vacation of the conviction but a new trial to correct an erroneous instruction so that the jury might pass on charges of criminal conduct not affected by *McNally.*

The argument for denying relief because the disputed question was waived by failing to appeal is much stronger here than in *Travers, Ingber,* and *Sams.* In our view, this case falls within the teachings of *Frady* and *Sunal,* and on that basis, the district court properly denied the writ. The issue that Osser brings at this late date should have been included in his direct appeal; to now excuse his failure to exhaust direct appellate procedures would disproportionately harm the prosecution.

### III.

■ Affirmance is also compelled by *United States v. Asher,* 854 F.2d 1483 (3d Cir.1988), in which *McNally* was urged on direct appeal as a ground for reversal of a mail fraud conviction. That case, like this one, also involved wrongdoing in the awarding of governmental contracts. After a review of the facts and post-*McNally* authority in other Courts of Appeals, we were "satisfied that the government in the instant case could not have proved a violation of intangible rights without simultaneously proving that the Commonwealth of Pennsylvania was deprived of money as the result of the no-bid contract awarded to CTA." *Id.* at 1496.

In *Asher,* the jury had been charged, as in Osser's trial, that either monetary loss or the deprivation of the right to honest government would support a conviction. We determined that the *Asher* jury "could not have found a fraudulent scheme that consisted solely of depriving the citizens of their right to honest government that did not also involve tangible losses by Pennsylvania." *Id.*

The instructions in *Asher* and the present case differ from those in *United States v. Piccolo,* 835 F.2d 517 (3d Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988). There, the trial judge charged that the jury could find the defendant's scheme had deprived his employer of money "and" of honest and faithful services. Because the instruction was in the conjunctive rather than the disjunctive, the conviction was affirmed; the jurors could not have found guilt unless they had found that an object of the scheme was to obtain property from the victim.

This Court adopted reasoning similar to *Asher* in an earlier case, *United States v. Catena,* 500 F.2d 1319 (3d Cir.), *cert. denied,* 419 U.S. 1047, 95 S.Ct. 621, 42 L.Ed. 2d 641 (1974). There, on appeal the defendant argued for the first time that the charge permitted the jury to convict on findings which, in themselves, would not constitute a violation of the statute. In rejecting that contention, we found "it 'inconceivable' that the error in the charge affected the outcome of the jury deliberations." *Id.* at 1325.

The *Catena* opinion cited *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974). The defendants in that case were convicted of conspiring to cast fictitious votes for federal, state, and local candidates in a primary election. On appeal, the defendants argued for the first time that the statute was limited to conspiracies to cast false votes in federal, not local elections. The Supreme Court held that jury instructions not limited to federal candidates did not require reversal. The Court stated, "Given the record, we think it inconceivable that, even if charged by more specific instructions, the jury could have found a conspiracy to cast false votes for local offices without finding a conspiracy to cast false votes for the federal offices as well." *Id.* at 228, 94 S.Ct. at 2264.

We have carefully reviewed the factual basis for Osser's conviction. The net result of the bid rigging was to deprive the City of Philadelphia of substantial sums of money over a period of years. That this is so is demonstrated conclusively in 1968 when the bid rigging scheme was suspended. During that year, one of the printing companies submitted a competitive bid 17% lower than that of the other firm the year

before. The other printer then placed a bid 45% lower than its preceding one. The next year, the scheme was reinstated and the contract price came in 40% higher.

Unquestionably, the arrangement worked out by Osser resulted in a substantial monetary detriment to the City, and no rational juror could conclude otherwise. *See United States v. Perholtz*, 836 F.2d 554, 560 (D.C.Cir.) (per curiam), *cert. denied*, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed. 2d 42 (1988). Once having found that Osser had participated in the bid rigging, the jury could not escape finding financial loss as part of the scheme. On that basis, therefore, *McNally* does not apply here.

Here, the trial judge specifically instructed the jury that Osser's receipt of secret payments could constitute an offense under the indictment. The court charged that if Osser had participated in a scheme to receive commissions as a result of his position with the City, "such commissions would have been due and owing to the City of Philadelphia" and he could be found guilty of "a scheme devised to defraud the City of Philadelphia out of secret commissions and moneys."

This charge was consistent with Pennsylvania law as set out in *Kribbs v. Jackson*, 387 Pa. 611, 619, 129 A.2d 490, 494 (1957), where the State Supreme Court determined:

> "All profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent.... [I]f profit accrues from his violation of duty, that likewise belongs to the principal ... because the agent cannot be permitted to derive advantage from his own default."

We do not overlook Osser's argument that in *United States v. Zauber*, 857 F.2d 137 (3d Cir.1988), this Court—on a direct appeal—explicitly disavowed the "constructive trust" theory as a basis for conviction under the mail fraud statute. However, *Zauber* must be read carefully. In that case, the indictment and the charge to the jury were focused solely on the deprivation of the employee's honest services by the receipt of kickbacks. There was no evidence of property loss nor was the jury asked to consider whether the taking of kickbacks constituted a monetary loss to the victimized pension fund. Indeed, the trial court instructed the jury that "it is absolutely irrelevant whether or not there was any loss in pension benefits, as well as whether or not the pension fund is presently financially strong." *Id.* at 145.

The Court of Appeals for the Seventh Circuit in *United States v. Holzer*, 840 F.2d 1343 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988), also found the constructive trust theory inapplicable where a county judge accepted bribes from attorneys. *Zauber* and *Holzer* are thus similar to *McNally* in that no effort was made by the prosecution to show property loss growing out of illegal activity.

Unlike the *Zauber*, *Holzer*, and *McNally* trials, the jury in this case was charged explicitly that it could find financial detriment to the City as a result of the kickbacks and commissions received by Osser. Thus, the trial court did not rely on a constructive trust doctrine as explicated in *Zauber* and *Holzer*.

Osser's conviction can be properly aligned with those post-*McNally* decisions where Courts of Appeals have held that a charge and evidence of monetary or property loss will sustain a conviction for mail fraud, even if the intangible rights theory was presented as an alternative basis for conviction. *E.g., United States v. Bonansinga*, 855 F.2d 476 (7th Cir.1988); *Perholtz*, 836 F.2d 554; *United States v. Richerson*, 833 F.2d 1147 (5th Cir.1987) (conspiracy to commit mail fraud); *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987).

We are aware that some courts have vacated convictions on the authority of *McNally* in cases where the jury was charged on the intangible rights theory as the basis for conviction. *E.g., United States v. Shelton*, 848 F.2d 1485 (10th Cir. 1988) (en banc); *United States v. Ochs*, 842 F.2d 515 (1st Cir.1988); *Holzer*, 840 F.2d

1343. Such decisions are not controlling here.

*Ochs* was decided on direct appeal and the court did not charge on the municipality's entitlement to the kickback moneys. Similarly, in *Shelton*, a habeas corpus case, "[t]he Government did not charge that the counties lost money because of the kickbacks." *Shelton*, 848 F.2d at 1491. In *Holzer*, the court pointed out that "the state's financial situation is the same whether [the defendant] takes bribes or doesn't take bribes.... This is an intangible-rights case and only an intangible-rights case." *Holzer*, 840 F.2d at 1348. In contrast, Osser pocketed moneys growing out of the city's legitimate activity in contracting for services, and in these circumstances—unlike *McNally*—the scheme increased the cost of the services to the municipality.

Osser is not entitled to coram nobis relief. The judgment of the district court will be affirmed.