**Harry NICKS, Petitioner–Appellee,**

v.

**UNITED STATES of America, Respondent–Appellant.**

**No. 230, Docket 91–6066.**

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1991.

Decided Jan. 23, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Richard E. Signorelli, David W. Denton, Asst. U.S. Attys., of counsel), for respondent-appellant.

William L. Patton, Boston, Mass. (Laurie R. Wallach, Akiyo Fujii, Ropes & Gray, Boston, Mass., Laurence T. Sorkin, Benjamin B. Wagner, Cahill Gordon & Reindel, New York City, of counsel), for petitioner-appellee.

Before CARDAMONE, WALKER and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

The United States appeals from a judgment and order entered March 12, 1991 in the United States District Court for the Southern District of New York (Knapp, J.) granting the petition for a writ of error *coram nobis* of Harry Nicks and vacating his 1974 conviction for armed bank robbery. The present litigation arises from petitioner's conviction for a brutal murder he committed in the State of Alabama. Petitioner was sentenced to death for that crime, with his prior federal robbery conviction in the Southern District of New York constituting an aggravating factor under Alabama law.

The specific issue now before us is whether the Southern District conviction was lawfully obtained against petitioner in light of his claim that at the time of his plea and sentencing he was incompetent. In an effort to vacate the aggravating predicate felony conviction that contributed to his death sentence, petitioner seeks relief by way of the ancient writ of *coram nobis*, a remedy used when all is lost and no other remedy is available.

It must first be decided whether Nicks' 15–year delay in seeking *coram nobis* renders this relief unavailable. Second, and equally important, a factual dispute exists as to what evidence was before the Southern District Court in 1974 at the time of Nicks' plea and sentencing. Without resolving this dispute, the district court held that Nicks' due process rights had been violated by its failure to hold a competency hearing. Since only those facts actually known by the court at the time of the initial proceedings are relevant, we must remand this matter so that both of these issues may be determined.

## BACKGROUND

### A. The 1974–1975 Plea and Sentencing Proceedings

On May 15, 1974 a New York City branch of the Franklin National Bank was robbed of $21,770 by a sole gunman brandishing a silver .38 caliber handgun at a teller. As he left the bank the robber fired a shot at a security guard. Three days later, Harry Nicks (hereafter appellee, petitioner, or defendant) was arrested in Cran-

ford, New Jersey for a traffic violation. He was driving a new car, from which police recovered $11,450 in cash and a silver .38 caliber revolver containing one spent cartridge. Nicks' photograph was shown to the bank teller who identified him as the robber.

On June 7, 1974 defendant was charged in a two-count indictment with the robbery of the bank, in violation of 18 U.S.C. § 2113(a), and assault with a dangerous weapon, in violation of 18 U.S.C. § 2113(d). Thomas J. Concannon, Esq. of the New York Federal Defender Services Unit was appointed as counsel. At arraignment before Judge Knapp on June 17, 1974 Nicks pled guilty to the second count of the indictment. During the plea allocution, Nicks responded appropriately to Judge Knapp's questions, except for asserting that he had not loaded the gun until after he left the bank. Noting that this statement did not fit the facts of the charge, the trial judge directed him to confer with his attorney. Following a recess, counsel informed the court that his client told him the gun was loaded when he entered the bank, and Nicks allocuted this fact to the court. When asked whether he had ever been convicted before, defendant stated that "I pleaded, the same thing I'm doing now."

Following the plea, the district court asked attorney Concannon whether he was "perfectly satisfied that [his client] understands what he is doing," to which counsel replied that he was. The court then observed that "[defendant] is not under any mental condition, it doesn't seem to me." To this, Nicks replied "no," and his counsel testified "I have discussed it with him for three or four hours. He seems to understand very well what he is doing."

On July 2, 1974 at defense counsel's request an order was entered pursuant to 18 U.S.C. § 4244 directing that defendant be examined by Dr. Norman Weiss, a psychiatrist, who reported the results of his examination in a July 15, 1974 letter to attorney Concannon, a copy of which was furnished to the district judge. Dr. Weiss diagnosed Nicks as "mentally retarded and probably borderline psychotic," though he observed defendant "appeared oriented for time, place, and person" and "appeared to be clear" when questioned about the charges against him. In addressing Nicks' competency, Dr. Weiss concluded that "I question his competency."

As a result, Judge Knapp on July 25, 1974 ordered defendant committed for an additional 60–day study to the Federal Correctional Institution in Milan, Michigan (Milan) under § 5010(e) of the Federal Youth Corrections Act, which provides for commitment and study when a sentencing court wants additional information about a defendant prior to sentencing. There, defendant was examined by Dr. Peter Davol, a psychiatrist, and Dr. Thomas J. Rosenbaum, a psychologist. Dr. Davol diagnosed appellee as suffering from "schizophrenia, paranoid type (acute and severe)," but found that he "appeared to understand the reasons for his being at Milan and the nature of his study," and "when he doesn't feel threatened and where the conversation involves relatively conflict-free subjects, [Nicks] is reasonably alert and 'together.'" The Milan report did not directly address the issue of competency, but recommended that defendant be sentenced to an eight-year indeterminate sentence under § 5010(c) of the Federal Youth Corrections Act.

At sentencing on January 16, 1975 neither Nicks nor his counsel requested a competency hearing nor did either seek to withdraw the previously entered guilty plea. In fact, when the sentencing judge asked counsel, "Are you satisfied in your own mind, Mr. Concannon, that Mr. Nicks understands the significance of what he is asking to be done?" Concannon replied "Yes, I do. I am satisfied, Your Honor. In addition, Your Honor, I still believe at the time of the inquiry of the plea that Mr. Nicks knew what he was doing, he understood what was happening." Defendant then responded to the court's inquiries regarding the crime, after which Judge Knapp concluded, "It does appear that the defendant understands the essentials of the charge that was placed against him." At counsel's request, the district court asked

appellee whether he wanted a competency hearing and whether he wanted to have his plea withdrawn, to which Nicks replied, "I want to be sentenced." Judge Knapp then sentenced defendant to an indeterminate term of up to eight years under the Federal Youth Corrections Act.

### B. The Alabama Murder Trial

Petitioner was released from federal custody on May 27, 1980 and transferred to a New Jersey state prison to serve a sentence for possession of a dangerous weapon and possession of cocaine. He was paroled in 1982 by the New Jersey authorities. On March 5, 1983 during an armed robbery of a pawnshop in Alabama, the robber ordered the store owner and his female employee to lie on the floor, and then shot them both in the back of the head. The owner died, but the employee survived and subsequently identified Nicks as the murderer.

After Nicks' arrest for this vicious crime, he was found incompetent by the Alabama Competency Review Board and committed for treatment. When later found competent to stand trial, he was convicted of murder committed during the commission of a felony. During the sentencing phase of the trial, the jury recommended by a 10 to 2 vote that Nicks be sentenced to death, finding no mitigating circumstances, and finding two aggravating circumstances: that the murder occurred during a robbery, and that he had committed a prior federal armed bank robbery that involved the use or threat of violence, the subject of this appeal. The Alabama court adopted the recommendation of the jury and imposed a sentence of death.

Nicks' conviction and sentence were affirmed by the Alabama Court of Criminal Appeals and the Alabama Supreme Court. *Nicks v. State*, 521 So.2d 1018 (Ala.Crim. App.1987), *aff'd*, 521 So.2d 1035 (Ala.1988). The United States Supreme Court denied certiorari, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988), and rehearing, 487 U.S. 1263, 109 S.Ct. 27, 101 L.Ed.2d 977 (1988). On January 17, 1989 in a petition for post-conviction relief under Alabama

law, Nicks asserted 30 separate claims for relief from his sentence, including a claim that his 1974 federal bank robbery conviction should not have been used as an aggravating circumstance. That petition is being held in abeyance in Alabama pending the outcome of this appeal.

### C. The *Coram Nobis* Proceedings

Nicks filed a petition for a writ of error *coram nobis* in July 1989 seeking to vacate his 1974 conviction on the ground that the district court's failure to conduct a competency hearing violated his due process rights and rendered his guilty plea void. In October 1989, with the petition, the government's response, and the record of the 1974–1975 proceedings before him, Judge Knapp prepared a draft memorandum stating that he had "review[ed] all the facts that came to [his] attention on or before ... the day on which sentence was imposed," and concluded that the petition should be denied. He reached this conclusion in large measure based on the competency and integrity of attorney Concannon, on whom he felt justified in relying to bring to his attention "any possible defenses available to his client." Referring to petitioner's plea allocution, the district judge found the record "contain[s] no suggestion that [petitioner] did not fully understand what he was doing, and why."

With regard to Dr. Weiss' report, the district court stated that it assumed that this psychiatrist, requested as an examining doctor by defense counsel, knew that in order to help defendant he would have had to adopt a position suggesting a competency hearing, and would have done anything he conscientiously could to help attorney Concannon's client. Judge Knapp concluded: "With these assumptions in mind, nothing in Dr. Weiss's letter suggested to me that there was any basis for a hearing on [Nicks'] mental competence." Addressing the report of the Milan study, the judge noted it presented a picture of "a highly disturbed and angry individual, not an unusual profile for an armed robber," and then observed that neither of the doctors, whom he trusted and who knew that he

would rely on their report in imposing sentence, suggested that a competency hearing was required. In fact, the district court declared that Dr. Davol's observation that Nicks was "fully oriented" had quite contrary implications. The court concluded: "In brief, neither of these reports suggested at the time—or suggests now—that a hearing was—or would have been—appropriate."

After preparing its draft memorandum to deny the petition for *coram nobis* the court received an affidavit from attorney Concannon dated November 17, 1989 in which the lawyer set forth his recollections of the 1974 and 1975 proceedings. Counsel related the difficulty he had working with Nicks, his doubts as to his client's competency, and the doubts of the probation officer regarding competency. In view of his doubts as to defendant's competency and defendant's strong desire to avoid psychiatric evaluation, counsel conferred with his supervisors in the Federal Defenders office and decided that a guilty plea was the best available alternative. Counsel further asserted that his statement to the sentencing court that Nicks understood the significance of what he was doing "reflected my view that Mr. Nicks really did not wish to be committed to a mental institution, but beyond that knew only in a vague and general way the difference between a guilty plea and an incompetency finding. I made no representations that Mr. Nicks was competent to assist his counsel either in plea negotiations, sentencing, or at trial."

The government employed a forensic psychiatrist, Dr. Robert H. Berger, to review the documentary record and render an opinion on the competency issue raised in the petition. Dr. Berger examined the 1974 and 1975 record and attorney Concannon's November 1989 affidavit. He submitted a thorough report which concluded that at the time of Nicks' plea and sentencing there were no reasonable doubts as to his competency. After explicitly addressing all of the evidence in the record, Dr. Berger determined that, at the time of plea and sentencing, "Nicks had a rational as well as factual understanding of the

charges and the proceedings against him and ... he was able to assist counsel in his defense properly and rationally."

On February 9, 1990 a hearing was held before Judge Knapp at which he initially reaffirmed his decision to deny the petition. Although troubled by counsel's November 1989 affidavit, the judge found it "really says nothing but that he is unhappy, which deplorable as it may be, doesn't give rise to a constitutional claim." At the court's suggestion attorney Concannon testified at this hearing, reiterating the difficulties that he had in communicating with Nicks and the doubts he held at the time of the plea and sentencing regarding Nicks' competency.

On March 28, 1990 the district court handed down a second proposed opinion, 760 F.Supp. 293, this time granting Nicks' petition on the basis that there existed reasonable grounds for questioning Nicks' competency at the time of his plea and sentencing. Once again, the sentencing judge disclaimed knowledge at the time of the initial proceedings of the facts asserted by attorney Concannon at the February 1990 hearing, but nonetheless found counsel's testimony determinative, stating

As [Concannon's] testimony now reveals, evidence existed which, *had it been before me*, would have raised serious doubts as to petitioner's competency. Although this case is unusual in that the evidence that entitled petitioner to a hearing *was not before me at the time that right arose*, I am not persuaded that this is a meaningful distinction, where, as here, the evidence of incompetency was so compelling. The fact that such evidence was deliberately withheld by defense counsel in an effort to best serve the interests and wishes of his client does not alter my conclusion that petitioner was entitled to a hearing (emphasis added).

This opinion was held in abeyance to give the government time to request an evidentiary hearing before a magistrate who would determine, "assuming that Mr. Concannon had decided to make an application before [the court] for a hearing and had

diligently marshalled all the evidence available to him," whether a hearing should have been held.

The government made such request and a hearing was held before a magistrate in May 1990. Concannon and Dr. Weiss testified. Concannon stated that some of the information in his affidavit relating to his doubts as to Nicks' competency had been disclosed to Judge Knapp off the record in 1974–1975. After the hearing, Judge Knapp modified his instructions to the magistrate, directing the magistrate not to concern herself with what he "would have done had certain facts been known to me," but to decide what relief—in light of the facts she presently finds to have then existed—petitioner was entitled to in 1974, it being *"wholly immaterial whether or not I was—or should have been—aware of the circumstances giving rise to such entitlement"* (emphasis added).

On November 27, 1990 the magistrate issued a detailed report describing the evidence before her and entering her findings of fact. She believed, contrary to the district court's initial impression, it had "in late 1974 and early 1975 substantially all of the facts upon which petitioner bases his present claim," and determined that on the basis of such information, "following [Nicks'] plea and at the time of his sentencing, petitioner's competency was sufficiently in doubt to require the court to hold a competency hearing."

The district judge adopted the magistrate's conclusion that a competency hearing should have been held, but stated his disagreement with her finding that attorney Concannon had informed him at the time of all of the facts relating to petitioner's present claim, stating that his "original recollection remains." Yet, consistent with its earlier comments, the district court considered this discrepancy irrelevant, insisting

> ... as I have repeatedly observed, *what I knew or did not know is wholly irrelevant.* The relevant question is: did the facts as they existed (regardless of who knew them or who didn't) constitutionally require that petitioner be afforded a

hearing before judgment was rendered against him (emphasis added).

On this basis a judgment and order was entered on March 12, 1991 granting Nicks' petition for a writ of error *coram nobis* and vacating his 1974 conviction. From that judgment and order the government appeals.

## DISCUSSION

### I

From the earliest days of the English common law a writ of error *coram nobis* was recognized as an appeal against a judgment either because some fact rendered it erroneous or because of some error of law apparent on its face. It was used to obtain relief for judicial wrongs for which there was no other remedy. When directed by a reviewing court to the court which tried the cause, it was called "coram vobis" (before you). But when judgment was rendered in the King's or Queen's bench, the writ was styled "coram nobis" (before us ourselves) because the writ was directed to another branch of the same court. R. Pound, *History and System of the Common Law,* 442 (Lawyers Cooperative Publishing Co. 1927). In a criminal case the writ was confined in England to the record which included the arraignment, plea, issue, verdict and judgment. It was not concerned with the course of the trial or the evidence. A writ could not be obtained as a matter of right; its issuance was left solely to judicial discretion. *See* Radcliffe and Cross, *The English Legal System,* 216 (5th ed. 1971).

Transplanted into American jurisprudence, the writ did not reach the facts found by a court or jury, unless the record revealed errors of such fundamental character as to render the proceeding itself irregular or invalid. *See United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914). But American courts have gone a bit further in granting *coram nobis* relief founded on the inherent power of a court over its own judgments. *See Bronson v. Schulten,* 104 U.S. 410, 416–17, 26 L.Ed. 797 (1881). Relief under the writ is limited in scope, having been abolished in

civil actions, Fed.R.Civ.P. 60(b), surviving as a remedy in criminal cases only to the extent it has not been replaced by statutes, and the writ will issue only where extraordinary circumstances are present. *See United States v. Deutsch,* 321 F.Supp. 1356, *aff'd,* 451 F.2d 98 (2d Cir.1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972).

In order to obtain a writ of error *coram nobis* under the All Writs Act, 28 U.S.C. § 1651(a), and to continue litigation after final judgment, after time has expired for review, and the sentence has been served, there must exist "circumstances compelling such action to achieve justice." *United States v. Morgan,* 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954).

■ The failure to hold a competency hearing when constitutionally required is an error of such magnitude. Convicting a defendant when he lacks the capacity to understand the proceedings against him, consult with counsel, and assist in the preparation of his defense is a fundamental error. *See Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975). It follows as a corollary that the failure to hold a required competency hearing deprives a defendant of his constitutional right to a fair trial and renders the conviction void. *See Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

■ Such an error may entitle a person to *coram nobis* relief notwithstanding that petitioner here does not assert innocence. *See, United States v. Morgan,* 222 F.2d 673, 674 (2d Cir.1955); *United States v. Keogh,* 391 F.2d 138, 148–149 n. 9 (2d Cir. 1968) (distinguishing between factual error where reasonable doubt of guilt must be raised and constitutional error where the defect itself is enough). Nonetheless, we must presume the proceedings were correct. The burden of showing otherwise rests on the petitioner. *See Morgan,* 346 U.S. at 512, 74 S.Ct. at 253. If it is established that Nicks was entitled to a competency hearing at the time of his plea and sentencing, a fundamental error has occurred and the writ may properly issue.

■ *Morgan* held that the writ was appropriate relief for a defendant who was denied counsel at trial, and noted that though the sentence has been served, subsequent disabilities may persist. It stated expressly that "[s]ubsequent convictions may carry heavier penalties," precisely the case here where petitioner's federal conviction was used as an aggravating factor at his sentencing for the Alabama murder. Hence, Nicks continues to suffer legal consequences from his conviction that may be remedied by granting of the writ. *See, United States v. Bush,* 888 F.2d 1145, 1149 (7th Cir.1989) (requiring legal disability for issuance of the writ); *United States v. Osser,* 864 F.2d 1056, 1059 (3d Cir.1988) (*coram nobis* relief not available unless conviction carries continuing penalties).

■ The Supreme Court further instructs *coram nobis* relief should issue only when "sound reasons exist[ ] for failure to seek appropriate earlier relief." *Morgan,* 346 U.S. at 512, 74 S.Ct. at 253. On the present record, we cannot determine whether Nicks has delayed too long. His *coram nobis* petition was filed in 1989, 15 years after his federal armed bank robbery conviction in New York and five years after his Alabama murder conviction. The fact that he may have had no reason to challenge the New York conviction until after the sentence was imposed in Alabama is not, standing alone, a sound reason. *See Maghe v. United States,* 710 F.2d 503, 503–04 (9th Cir.), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3549, 77 L.Ed.2d 1396 (1983). Nicks contends that the delay was justified because he was indigent, incompetent, and imprisoned throughout most of the period prior to filing his petition. We observe that though he was represented by counsel in both the federal and Alabama proceedings—and determined to be competent by the Alabama court—the present record is insufficient to resolve this issue.

■ On remand, therefore, the district court should make the necessary factual findings and determine whether Nicks had "sound reasons" for his lengthy delay in seeking *coram nobis* relief. If the district

court decides there was not sufficient justification for his failure to seek relief at an earlier time, the writ is unavailable and his petition for *coram nobis* should be dismissed. If, on the other hand, it is determined that Nicks is entitled to *coram nobis* relief, it is then necessary to decide whether a competency hearing was in fact constitutionally required at the time of his plea and sentencing in 1974–75.

## II.

■ Thus, the next issue to be decided is the correct standard for deciding whether a competency hearing was required. The district court quite plainly believed that all of the evidence relating to Nicks' competency available at the time of the initial proceedings—regardless of whether or not that evidence was before the court—was relevant in ruling on the petition. In this respect we think the district court erred. In ruling on a petition for a writ of error *coram nobis* challenging a conviction because of a failure to hold a competency hearing, only that evidence of which the trial court had knowledge at the time of petitioner's plea and sentencing may properly be considered.

Having stated our conclusion at the outset, we now set forth the reasons that led to it. Blackstone states that one who commits a crime while of sound mind, but then is incompetent at his arraignment, should not be arraigned because he is unable to plead with "that advice and caution that he ought;" and, if incompetent, should not stand trial because "how can he make his defense?" If the disability arises after judgment has been pronounced, it should be stayed because without the disability the defendant "might have alleged something in stay of judgment or execution." 4 William Blackstone, *Commentaries on the Laws of England*, 24–25 (Univ. of Chicago Press 1979) (1769).

Given that common law background, the Supreme Court in *Pate*, 383 U.S. at 385, 86 S.Ct. at 842, held that where the evidence raised a sufficient doubt as to a defendant's competence to stand trial, the failure of the trial court to conduct a competency hearing *sua sponte* violates due process. This standard substantially conforms to that which is required under 18 U.S.C. § 4241 (1988) (formerly 18 U.S.C. § 4244). *See Saddler v. United States*, 531 F.2d 83, 86 (2d Cir.1976) (per curiam) (construing 18 U.S.C. § 4244 to require a competency hearing upon reasonable grounds for doubt); *United States v. Vowteras*, 500 F.2d 1210, 1212 (2d Cir.) (same), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

Section 4241 provides that the district court, upon its own motion if necessary, must hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Applying these rules, we have stated that a hearing must be held when there is reasonable ground for a district court to conclude that the defendant may not be competent to stand trial. *See United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir.), *cert. denied*, 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972).

■ There exists, therefore, an affirmative obligation on the part of the trial court to order a competency hearing when warranted by the evidence. It is axiomatic that in reviewing whether this obligation was properly discharged only the evidence before the court at the time its decision was made is pertinent. Obviously, before being required to hold a competency hearing on its own initiative, the trial judge must be made aware of the factual basis for questioning the competence of the defendant. *See, e.g., United States v. Auen*, 846 F.2d 872, 877–78 (2d Cir.1988) (competency hearing must be held where the facts presented to court warrant it); *Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir.) (competency hearing must be held where trial court alerted to defendant's mental problems), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Roth*, 455 F.2d at 1108 (only where evidence before

court provides a "reasonable ground" for believing defendant is incompetent should there be an examination).

It is for that reason that our decisions uniformly hold that the trial court is required to consider only that evidence actually before it when deciding whether a competency hearing is required. *See, e.g., United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986) ("failure to conduct a full competency hearing is not a ground for reversal when the defendant appears competent during trial"), *cert. denied*, 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987); *Newfield v. United States*, 565 F.2d 203, 206–07 (2d Cir.1977) (insufficient evidence at trial to require a competency hearing); *Saddler*, 531 F.2d at 86 ("[i]f the judge, in response to his Rule 11 inquiries or because of information received from other sources has reasonable grounds to doubt the defendant's competence," a hearing is required). The inquiry is whether, "in light of what was then known, the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial." *Drope*, 420 U.S. at 174–175, 95 S.Ct. at 905. In determining whether to hold a competency hearing, the applicable standard does not contemplate that a judge be omniscient, but simply that a trial court rule on the objective facts of which it has knowledge. *See Reese v. Wainwright*, 600 F.2d 1085, 1092 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

Here the district court asserted that the facts casting doubt on Nicks' competence—as disclosed by Concannon's 1989 affidavit and 1990 testimony—were not known by it when Nicks pled and was sentenced. In his March 28, 1990 proposed decision, Judge Knapp stated his recollection that the facts related by attorney Concannon were not before him in 1974. The district court expressed disagreement with the magistrate's contrary finding, stating in its February 4, 1991 memorandum and order granting Nicks' petition that while "Concannon, in his testimony before Judge Roberts, emphatically asserted a recollection that back in 1975 he had fully advised me of the basis for his concern about his

client's competence ... my recollection as to the extent of his then disclosure is quite different." After studying the magistrate's report and examining the testimony, the district judge stated that his "original recollection remains."

Although we have held that it is entirely proper for a trial judge to rely on his or her own recollections in ruling on a motion to vacate a conviction, *see Polizzi v. United States*, 926 F.2d 1311, 1320 (2d Cir.1991); *Zovluck v. United States*, 448 F.2d 339, 343 (2d Cir.1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972), here Judge Knapp explicitly declined to make a "judicial determination" as to what facts were actually before him in 1974 and 1975. He thus did not make an explicit factual finding with regard to the magistrate's report, stating that "[n]eedless to say, I express no *judicial* view as to the correctness of [the magistrate's] finding in this regard." (emphasis in original). In fact, Judge Knapp went on to say that "[i]f it made the slightest difference to a decision in this case which of our recollections is more accurate, I would undoubtedly recuse myself and cause the matter to be reassigned to a non-participating judge."

Because under the rule set forth above, it is necessary that a factual finding be made as to what evidence was actually before the district court at the time of the initial proceedings, we believe that the appropriate course is to have the district court make this determination on remand. As Judge Knapp has indicated, in such event, his intention to recuse himself, we remand the case directly to a non-participating judge. Once it is first determined what facts were actually before Judge Knapp at the time of petitioner's plea and sentencing, the district court will then address whether those facts provided reasonable grounds for doubting Nicks' competency so as to have mandated the holding of a competency hearing.

## CONCLUSION

The judgment and order appealed from is reversed and the matter remanded to a

non-participating district judge for further proceedings consistent with this opinion.