**UNITED STATES of America**

v.

**Paul J. FOONT, Defendant–Petitioner.**

**No. 89 Cr. 765 (CSH).**

United States District Court,
S.D. New York.

Oct. 19, 1995.

---

See also 1993 WL 288271, 1993 WL 497868.

McCarter & English, Newark, NJ (Mark Weissmann, of counsel), for defendant-petitioner.

Mary Jo White, United States Attorney, New York City (I. Bennett Capers, Assistant United States Attorney, of counsel), for U.S.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Paul J. Foont petitions for a writ of error *coram nobis* to withdraw his plea of guilty to a charge of conspiracy in violation of 18 U.S.C. § 371. The indictment in question, charging Foont and his co-defendant, Jeffrey

L. Feldman, bore docket number 89 Cr. 765. In briefing the present petition, Foont and the government continue to use the caption and docket number of that criminal action. A *coram nobis* petition is a separate action, usually pleaded in the name of the petitioner against the prosecuting authority as respondent. *See, e.g., Nicks v. United States,* 955 F.2d 161 (2d Cir.1992). In the opinion that follows I will refer to Foont as the "petitioner."

The government opposes Foont's petition and asks that it be dismissed.

## PROCEDURAL HISTORY

The criminal indictment charged Feldman and Foont with various offenses arising out of certain financial transactions entered into by the so-called "Cralin Partnerships." The Cralin Partnerships were a series of New York limited partnerships that were promoted as dealers or broker-dealers in various securities, commodities, and options. The government charged in the indictment that Feldman and Foont devised a plan to create approximately $140,000,000 in false tax deductions for the 1981 tax year, such deductions to be passed on to the limited partners in the Cralin Partnerships. The thrust of the indictment was that the defendants created and concealed a fraudulent income deferral device aimed at evading taxes for the 1981 tax year.

Count One of the indictment charged Feldman and Foont with conspiracy to accomplish this illicit purpose, in violation of 18 U.S.C. § 371. There followed a number of substantive counts arising out of the revenue laws, and involving conduct for the period 1981 through 1985.

Shortly before the commencement of trial, both defendants decided to plead guilty. The government accepted pleas of guilty from Feldman and Foont to Count One in full satisfaction of the indictment. This Court imposed custodial sentences upon both Feldman and Foont.

Following sentencing, Feldman and Foont pursued quite different procedural paths. Foont sought no post-sentence relief. He was sentenced to a period of imprisonment of one year and one day. He did not appeal his conviction, surrendered to the Bureau of Prisons and completed his term of imprisonment in 1991. Foont's present petition for a writ of error *coram nobis* represents his first application for a judicial remedy following this Court's acceptance of his plea of guilty and imposition of sentence.

In stark contrast, Feldman, who was sentenced on July 11, 1990 to two years' imprisonment, did not surrender to the Bureau of Prisons to commence his term. Instead, he brought a petition for *habeas corpus* under 28 U.S.C. § 2255. Feldman sought to withdraw his plea of guilty and stand trial on the charges in the indictment against him. The thrust of Feldman's *habeas corpus* petition was that he had not been properly advised, by either his attorney or this Court, of the *mens rea* requirement of the crime with which he was charged, so that his allocution at the time of his guilty plea was fatally flawed.

I denied Feldman's petition in an opinion and order dated March 6, 1991. The Second Circuit affirmed that denial on the ground that Feldman had not shown cause for the failure to raise his claim upon direct appeal and consequently could not do so on a § 2255 motion. Thereafter Feldman moved this Court for leave to file a late notice of appeal and related relief. I denied that motion in an opinion dated November 17, 1992. The Second Circuit affirmed that denial as well.

Feldman then moved for a reduction of sentence under Fed.R.Crim.P. 35(b), as that rule existed prior to its amendment in 1987 as part of the Sentencing Reform Act of 1984. In an opinion dated July 29, 1993, I granted Feldman's motion and reduced his sentence from one of imprisonment to three years' probation and community service.

As appears from its papers in opposition to Foont's present petition, that reduction of sentence irritated the government. But it did not satisfy Feldman, who moved again under 28 U.S.C. § 2255 to withdraw his plea of guilty and stand trial. I denied that petition in an opinion dated November 29, 1993.

Foont professes to find, in this Court's granting of Rule 35(b) relief to Feldman,

support for his own *coram nobis* petition. Specifically, Foont points to comments the Court made about certain declarations of Cralin's attorney and accountants. *See* Opinion dated July 29, 1993, 1993 WL 288271, at slip op. 4–5.

In this opinion I will refer again to that attorney and those accountants. It is necessary to note, however, that Feldman's Rule 35(b) motion and Foont's *coram nobis* petition present entirely different procedural contexts. Under former Rule 35(b), the sentencing judge had broad discretion in deciding what factors bore upon whether a sentence should be reduced. In contrast, the law imposes strict limitations upon what can be considered, and for what purposes, on a *coram nobis* petition. In the discussion that follows, I consider the nature of the writ, its prerequisites and limitations, all as declared by higher authority which is binding upon this Court.

## DISCUSSION

In *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954), the Supreme Court said of the writ of error *coram nobis*: "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." The more recently articulated rule in the Second Circuit is that "the writ will issue only where extraordinary circumstances are present." *Nicks v. United States*, 955 F.2d at 167.

*Nicks* involved a petition for a writ of error *coram nobis* to vacate a 1974 conviction and 1975 sentencing in this Court on a charge of armed bank robbery. In his petition Nicks contended that he was mentally incompetent at the time of plea and sentence or, at the very least, that the district court should have held a constitutionally required competency hearing. The Second Circuit's opinion in *Nicks* identified the three showings the petitioner had to make to obtain the writ. First, Nicks had to show that he "was entitled to a competency hearing at the time of his plea and sentencing," since if he was so entitled (no hearing having been held by the district court), "a fundamental error has occurred and the writ may properly issue." *Id.*

Second, Nicks had to show that he continued to suffer "legal consequences from his conviction that may be remedied by granting of the writ." *Id.* As authority for that proposition, the Second Circuit referred to the Supreme Court's observation in *Morgan*, 346 U.S. at 512–13, 74 S.Ct. at 253, that "[a]lthough the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected." (footnote omitted). The *Nicks* court also relied upon decisions in other circuits which held that *coram nobis* relief was not available unless the challenged conviction carried continuing penalties. *Nicks*, 955 F.2d at 167 (citing *United States v. Bush*, 888 F.2d 1145, 1149 (7th Cir.1989), and *United States v. Osser*, 864 F.2d 1056, 1059 (3rd Cir.1988)). That requisite showing presented no problem for Nicks, since the effect of the 1974 federal conviction he sought to challenge by *coram nobis* factored into an Alabama court's sentence of death for a subsequently committed state crime.

Third, the Second Circuit in *Nicks* interpreted *United States v. Morgan*, 346 U.S. at 512, 74 S.Ct. at 253, as instructing that "*coram nobis* relief should issue only when 'sound reasons exist [ ] for failure to seek appropriate earlier relief.' " That raised the question whether Nicks had delayed too long. "His *coram nobis* petition was filed in 1989, 15 years after his federal armed bank robbery conviction in New York and five years after his Alabama murder conviction." 955 F.2d at 167. The *Nicks* court concluded that it could not resolve the issue of timeliness on the record then before it.

The timeliness of Nicks' petition became the threshold issue on remand. That is made entirely clear by the Second Circuit instructions to this Court:

On remand, therefore, the district court should make the necessary factual findings and determine whether Nicks had "sound reasons" for his lengthy delay in seeking *coram nobis* relief. If the district court decides there was not sufficient justification for his failure to seek relief at an

earlier time, the writ is unavailable and his petition for *coram nobis* should be dismissed. If, on the other hand, it is determined that Nicks is entitled to *coram nobis* relief, it is then necessary to decide whether a competency hearing was in fact constitutionally required at the time of his plea and sentencing in 1974–75.

955 F.2d at 167–68.

Having been assigned the case on remand, I considered the medical evidence and other pertinent circumstances, and concluded that "Nicks' mental condition while incarcerated, the limitations under which his trial counsel labored, and the proper procedural path trod by his appellate counsel combine to establish sound reasons why Nicks did not apply earlier to this Court for *coram nobis* relief." *Nicks v. United States,* 835 F.Supp. 151, 156 (S.D.N.Y.1993).

In the light of these precedents, I turn to Foont's *coram nobis* petition.

I think it accurate to say that of the three prerequisites to granting of the writ identified in *Nicks,* the first is substantive and the second and third are procedural. That is to say, the existence *vel non* of a fundamental error in the proceedings, or other extraordinary or compelling circumstances militating in favor of the writ, raises issues of merits and substance. But the second prerequisite, the petitioner's continuing to suffer legal consequences from the conviction, and the third, the existence of a sound reason for failing to seek appropriate earlier relief, raise procedural issues which relate more to the standing of the petitioner to invoke the writ, whatever the underlying merits may be.

In the case at bar, the government asserts that Foont fails both procedural tests. First, the government argues that Foont has failed

to show any continuing legal consequences resulting from his conviction. Second, the government argues that Foont has failed to show sound reasons for his delay in seeking to withdraw his plea of guilty.

I discuss these factors in turn.

*The Adverse Legal Consequences Requirement*

■ As previously noted, the Second Circuit in *Nicks* interpreted *United States v. Morgan* as requiring evidence that a defendant faces continuing legal disability before the issuance of a *coram nobis* writ can be obtained. It has denied application for the writ in a situation where defendant's application "failed to show any outstanding adverse legal consequences from his conviction and one-month sentence for criminal contempt ... which were necessary to give the district court jurisdiction of his application to vacate the judgment of conviction even under the liberal scope of *coram nobis.*" *United States v. National Plastikwear Fashions, Inc.,* 368 F.2d 845, 846 (2d Cir.1966), *cert. denied, sub nom. Greene v. United States,* 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967), *reh'g denied* 386 U.S. 1043, 87 S.Ct. 1490, 18 L.Ed.2d 618 (1967). In *Nicks,* the Second Circuit was careful to note that the petitioner "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Nicks,* 955 F.2d at 167. Other circuits have explicitly followed this standard. *See, e.g., United States v. Bush,* 888 F.2d 1145 (7th Cir.1989) (*coram nobis* relief unavailable unless defendant suffers legal disability); *United States v. Osser,* 864 F.2d 1056 (3rd Cir.1988) (collateral consequences required for *coram nobis* relief).[1] I adhere to this standard: Foont must show a continuing legal disability as a result of his

---

**1.** In his Reply Memorandum, Foont states that "The government would have this Court believe that it is settled law that a defendant seeking *coram nobis* relief is required to establish a 'continuing legal disability.' Actually, it remains an open question whether such a requirement exists.... The Circuit Courts are split on this issue...." Def's Rep.Mem. at 18. Defendant then cites *United States v. Bush* for the proposition that the circuit courts are split on the necessity of demonstrating adverse legal consequences to justify the grant of a coram nobis writ. Def's

Rep.Mem. at 18. This is an inaccurate representation of *Bush.* The *Bush* Court noted that circuit courts are split in their assessment of what constitutes a sufficient civil disability to support issuance of the writ, not that the courts are in dispute over the need to find some continuing adverse legal consequences. 888 F.2d at 1148–49. Furthermore, this Court is bound by Second Circuit precedent on the matter; defendant's arguments about circuit splits are of no avail in this forum.

conviction to be eligible for *coram nobis* relief.

 Foont's argument that he satisfies the requirement of continuing legal disability is more compelling. In his Reply Memorandum, Foont states that as a result of the conviction following his guilty plea, he is barred from working as a securities broker or dealer by Section 3(a)(39) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(39).[2] Def's Reply Mem. at 20. The Second Circuit has not ruled on the question of whether the loss of a license to practice one's profession constitutes an adequate collateral consequence to justify issuing a *coram nobis* writ. The Seventh Circuit has addressed that question, albeit in dicta. *United States v. Keane*, 852 F.2d 199 (7th Cir.1988), *cert. denied*, 490 U.S. 1084, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989). Keane was an attorney who was disbarred after being convicted of mail fraud, and then readmitted to practice before the case was presented to the Seventh Circuit. Nonetheless, the Seventh Circuit spoke to the issue of disbarment, noting that "the [*coram nobis*] writ is valuable to bring an end to what may be substantial civil disabilities attached to criminal convictions. These include loss of the rights to vote, to hold occupational licenses.... [T]his sort of civil disability [disbarment] could support the issuance of the writ." 852 F.2d at 203.

This perspective is bolstered by the Seventh Circuit's later language in *Bush*. Bush had served as Press Secretary to Chicago's Mayor Daley before his conviction of mail fraud; in moving for *coram nobis* relief he argued that, as a media strategist and politi-cal consultant, he faced continuing legal consequences because "doors have been barred in his entire line of work." *Bush*, 888 F.2d at 1150. The Seventh Circuit's response contrasts with its *Keane* language and indirectly addresses the claims made by Foont in this case:

> Reputational injury falls most heavily on those who prefer high-visibility positions.... Bush does not claim that all positions in consulting and public relations work are closed to felons; he maintains only that the ones he yearns for are not available.... Unwillingness to hire someone for mouth-watering jobs is not a legal disability 'unique to criminal convictions.' It is not a 'legal disability', period.

*Id.*

 By contrast, Foont argues, in his motion, exactly what Bush could not: that *all* securities trader and broker positions are closed, by law, to him. Foont is not complaining simply of reputational harm from the blemish of his prior conviction, nor of his diminished job prospects due to private employers' decisions not to hire him because of the conviction. Instead, Foont faces a statutory bar, a legal impediment to returning to his profession. The Court is persuaded that this constitutes a harm entirely different from the reputational injury suffered by every convicted felon who re-enters the world and tries to redeem himself or herself. A statute which bars Foont from reentering his profession presents just the kind of continuing legal consequence that justifies allowing a defendant to properly move a court to issue a *coram nobis* writ. Foont has met this prerequisite.

2. Defendant additionally states that his conviction has a negative impact on his ability to find work in other fields, and that he faces the danger of increased criminal penalties in any possible future proceedings. These arguments do not move the Court. I have no doubt that the great majority of released felons face difficulty in convincing prospective employers to overlook their criminal records when making hiring decisions. This is clearly a collateral consequence of a conviction, but it is not a *legal consequence* of the type specified by the Second Circuit as a prerequisite to eligibility for *coram nobis* relief. To call it such would render the continuing legal conse-quences standard so frequently satisfied as to be toothless.

Nor can the potential risk of increased future criminal penalties serve as the requisite legal disability. The Second Circuit relied on this factor in *Nicks* because the defendant was, at the time of his motion, facing the death penalty due to the assessment of his prior conviction as an aggravating factor for sentencing. *Nicks*, 955 F.2d at 162. In this case, however, the threat is purely hypothetical: Foont faces no criminal charges at this time, and therefore no immediate possibility of enlarged criminal penalties for such charges. Potential future harm does not qualify as legal disability.

*Delay in Seeking Coram Nobis Relief*

In order properly to evaluate whether Foont has shown sound reasons for not seeking judicial relief earlier, it is necessary to consider in detail the grounds he urges in support of the present petition.

Foont's first contention is that this Court did not conduct a proper allocution at the time of Foont's plea of guilty to Count One of the indictment. He argues that his answers to the questions of Court and counsel during the allocution did not afford the Court a sufficient basis in fact or in law for accepting the plea. Feldman made a comparable contention in his first petition for *habeas corpus* relief.

The main brief for Foont, after setting forth extended quotations from the plea allocution, and quoting the pertinent provisions of Rule 11(f), Fed.R.Crim.P., concludes on this point at p. 26:

> It is most respectfully submitted that this Court erred in accepting Mr. Foont's plea because "the conduct admitted" by Mr. Foont, namely, that he was involved in riskless repos, *does not* "constitut[e] the offense charged."

The government replies with an equally lengthy analysis of the plea proceedings, and argues that the Court acted properly in accepting Foont's plea.

 While I believe that Foont's allocution was sufficient in fact and in law, I need not and do not base my resolution of this *coram nobis* petition on that conclusion. That is because Foont has not, and cannot, establish sound reasons why he did not earlier apply to this Court to withdraw his guilty plea because of an inadequate allocution in violation of Rule 11.

That proposition requires little analysis. The record of the plea proceedings, upon which Foont's present counsel relies and energetically parses, has been in existence since the day the plea was accepted. No reason appears why Foont could not have applied to withdraw his guilty plea on that basis prior to sentence or immediately after sentence and the entry of judgment of conviction, thereafter taking an appeal if unsatisfied by the result. There is no showing of mental incompetence, as in *Nicks*, or any other factor to justify the delay. Accordingly the propriety of this Court's accepting Foont's guilty plea cannot be raised on a writ of error *coram nobis*.

The additional bases for relief urged by Foont fall outside the boundaries of the plea allocution. Accordingly they give rise to different considerations.

Specifically, Foont contends that an article written by Peter Rothenberg, tax counsel for the Cralin Partnerships, published in a 1984 issue of the U.S.C. Tax Law Institute Proceedings, about which the government questioned Rothenberg in the grand jury proceedings in this case, demonstrates Rothenberg's understanding and belief that the Cralin transactions did not violate the tax laws. Foont suggests that the government's failure to disclose this grand jury testimony violated its obligations under *Brady v. Maryland.*

Rothenberg's 1984 article was presented in speech form at an annual Institute on Federal Taxation at the University of Southern California on January 16, 1984. Foont also proffers a tape recording of that speech, which he says he did not obtain until February, 1994. He argues that it is even more helpful to him in demonstrating Rothenberg's belief that the Cralin transactions were not illegal.

Further on the subject of Rothenberg, Foont has obtained a copy of a letter dated August 9, 1993 written by Rothenberg to the chief counsel of the Departmental Disciplinary Committee of the New York State Supreme Court, Appellate Division, First Department. Rothenberg was responding to a complaint filed against him by Foont's codefendant Feldman. Rothenberg's letter deals, *inter alia,* with pre-indictment information Feldman and Foont gave to Rothenberg about the Cralin transactions, and Rothenberg's advice to Feldman and Foont. Foont relies upon the contents of Rothenberg's letter as further evidence of reassurances that the Cralin transactions did not violate the tax laws.[3]

---

3. It should be noted, in this regard, that Rothenberg made a point in his letter to the Disciplinary

Lastly, Foont relies upon deposition testimony of Price Waterhouse personnel given during depositions in the civil litigation which followed the Cralin prosecution. Foont contends that this deposition testimony reveals that Feldman did not mislead Price Waterhouse as the government suggested during the course of the criminal case.

With respect to these additional bases for a writ of *coram nobis,* delay in asserting them does not operate as an absolute bar, as in the case of the allegedly inadequate plea allocution. Nonetheless, these factors, considered separately or in concert, are not sufficient to justify issuance of the writ, given the evidentiary purpose for which they are offered.

*Whether Newly Discovered Evidence Relevant Only to the Guilt or Innocence of the Petitioner is Cognizable in a Coram Nobis Proceeding*

I accept Foont's assertions that he did not know of the Rothenberg article, the tape of the Rothenberg speech, Rothenberg's letter to the Disciplinary Committee, or the Price Waterhouse depositions until after he had pleaded guilty and been sentenced. That is of course necessarily true with respect to all but the first of these pieces of evidence, Foont having been sentenced in June, 1990. It is equally obvious that only the Rothenberg article, published in 1984 and referred to before the grand jury, could be made the subject of a suggestion that the government had not met its *Brady* obligations.

■ On that last point, I adhere to the conclusion I reached in rejecting Feldman's identical contention, that *Brady* did not require the government to disclose an article previously published in a journal available to the public. *See* Opinion dated November 29, 1993, 1993 WL 497868 at slip 4–5. Foont argues that at the pertinent times, Rothenberg's article was not available on the computer databases that form a part of our currently daily existence. I do not think that makes any difference to the analysis.

The more important point is that, viewing these several evidentiary sources together, they are offered by Foont to support the position he now wishes to offer at trial: that because he relied upon advice given to him by Cralin's attorney and accountants, he lacked the necessary *mens rea.* In short, this evidence is offered as proof of Foont's innocence of the crimes charged in the indictment.

■ But this is not a legitimate use of the extraordinary writ of error *coram nobis.* It is well settled that "[a] claim of newly discovered evidence relevant only to the guilt or innocence of the petitioner is not cognizable in a *coram nobis* proceeding." *Moody v. United States,* 874 F.2d 1575, 1577 (11th Cir.1989). Thus the district court must deny relief where a *"coram nobis* petition was, in substance, merely an untimely motion for a new trial based on newly discovered evidence." *Id.* At that point in the text, the Eleventh Circuit drops a footnote citing a number of cases standing for the same proposition. One of these is Judge Friendly's opinion in *United States v. Keogh,* 391 F.2d 138 (2d Cir.1968).

The defendant in *Keogh,* a former state court judge, was convicted in this Court of conspiring to obstruct justice in violation of 18 U.S.C. § 1503. Keogh petitioned this Court (Weinfeld, *Judge* ) for a writ of error *coram nobis,* alleging that the prosecution suppressed exculpatory evidence and used perjured testimony. The principal piece of evidence at issue was an FBI report of its investigation into certain banking records, rendered some ten days before the indictment. 391 F.2d at 142. Keogh complained of the government's failure to turn over that report prior to trial.

The Second Circuit remanded the case to Judge Weinfeld, the trial judge, to conduct an evidentiary hearing addressing the sole issue of "whether the Government's failure to turn over the report was sufficiently serious in its motivations or consequences to warrant the extraordinary relief of *coram nobis." Id.* at 149. However, Judge Friendly prefaced

Committee of the fact that "Mr. Foont did not tell me—at that time or subsequently—that these trades were the subject of secret oral agreements

as was later alleged in the grand jury indictment." Ex. H to Affidavit of Mark Weissmann, counsel for Foont on the present petition.

that instruction by dismissing Keogh's arguments which were addressed solely to the question of guilt or innocence:

If the utmost Keogh's defense could have accomplished was to engage in the forensic endeavors outlined early in our discussion and the nondisclosure was an excusable oversight, we would readily sustain the dismissal of the petition by the district judge.

*Id.* Thus it is that the Eleventh Circuit in *Moody* cited *Keogh* for the proposition that evidence relevant only to the guilt or innocence of the petitioner is not cognizable in a *coram nobis* proceeding. *Keogh*'s analysis on that point is instructive in the case at bar, where there is no comparable suggestion of prosecutorial misconduct.

The same is true of a federal *habeas corpus* proceeding, the Supreme Court having recently held in *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), that a claim of actual innocence based on newly discovered evidence is not ground for federal habeas relief. That holding is instructive because, as the Second Circuit has observed, the "standards applied in federal *coram nobis* are similar" to those applied under 28 U.S.C. § 2255. *United States v. Travers,* 514 F.2d 1171, 1173 n. 1 (2d Cir. 1974) (Friendly, J.). *See also United States v. McCord,* 509 F.2d 334, 341 (D.C.Cir.1974) ("However, *coram nobis,* like § 2255 and the writ of habeas corpus, may collaterally attack only constitutional or jurisdictional errors or serious defects in the trial either not correctable on direct appeal or where exceptional circumstances justify the failure to appeal on those grounds.") (footnote omitted). *See also Guinan v. United States,* 6 F.3d 468, 470 (7th Cir.1993), (citing and applying *Herrera v. Collins:* "Section 2255 is a substitute for habeas corpus and like it is confined to correcting errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude.").

■ The proposition that Foont seeks to establish by reference to all this evidentiary material is stated clearly enough in Foont's main brief at 36: "Mr. Rothenberg's various statements, whether in a speech to colleagues at a seminar, written in a scholarly article, or told to the Disciplinary Committee, demonstrate that Cralin and its principals were relying upon the advice of counsel in structuring these transactions." In short, the proffered evidence and arguments relate solely to Foont's guilt or innocence. As such, they are not cognizable in a *coram nobis* proceeding.

## CONCLUSION

For the foregoing reasons, the petition is dismissed.

It is SO ORDERED.