23-6528-cr
*United States v. Stenger*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of June, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

>*Appellee*,

> v.                                                                23-6528

WILLIAM STENGER,

>*Defendant-Appellant*.\*

_____

---

\*  The Clerk of Court is respectfully directed to amend the caption as displayed above.

FOR APPELLEE:                                   NICOLE P. CATE, Assistant United States
                                                Attorney (Gregory L. Waples, Assistant
                                                United States Attorney, *on the brief*), *for*
                                                Nikolas P. Kerest, United States Attorney for
                                                the District of Vermont, Burlington,
                                                Vermont.

FOR DEFENDANT-APPELLANT:                         DAVID J. WILLIAMS (Brooks G. McArthur, *on
                                                the brief*), Gravel & Shea PC, Burlington,
                                                Vermont.

Appeal from an order of the United States District Court for the District of Vermont (Geoffrey W. Crawford, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court, entered on May 15, 2023, is **AFFIRMED**.

Defendant-Appellant William Stenger appeals from the district court's order denying his petition for a writ of *coram nobis*, which sought to strike the restitution order previously imposed in April 2022 as part of the judgment in his criminal case. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

Stenger pled guilty, pursuant to a written plea agreement, to one count of making a false statement, in violation of 18 U.S.C. § 1001. The charge arose from written materials that Stenger submitted to Vermont state regulators in January 2015 in connection with the AnC Vermont EB-5 project (the "AnC project"). Specifically, he submitted false information related to the AnC project's financial projections and an unreliable commercialization timeline that omitted the project's need to obtain approval from the United States Food and Drug Administration. The AnC project involved a plan to construct and operate a biotechnology facility in Newport, Vermont, and

2

the government alleged that Stenger was responsible for raising over $80 million from AnC investors. The government further alleged that Stenger and his co-conspirators participated in a fraudulent scheme, in connection with the AnC project, in which they misused investor funds and lied about revenue and job creation for the project. Relevant here, the main dispute at Stenger's sentencing was the issue of restitution. After receiving detailed written submissions from the parties and conducting an evidentiary hearing, the district court ordered Stenger to pay restitution to thirty-six investors in the amount of $250,000, for funds invested in the AnC project after the date of Stenger's false statements to the state regulators in January 2015.

Stenger did not appeal the restitution order. However, on April 13, 2023, Stenger filed a *coram nobis* petition, under 28 U.S.C. § 1651(a), seeking to vacate the restitution order. Stenger's petition argues that the proximate cause of the investor losses covered by the restitution order was not his or his co-defendants' false statements in January 2015 to state regulators, but rather an April 2015 decision by Commissioner Susan Donegan of the Vermont Department of Financial Regulation ("DFR") to lift a hold on AnC project marketing that allowed Stenger to obtain those funds from the investors.[1] Although Stenger raised this precise argument at his sentencing, he argues in his *coram nobis* petition that two internal DFR memos further support his position. These memos, written in February 2015 by Christopher Smith, DFR's Director of Capital Markets (the "Smith Memos")—which the government provided to Stenger's counsel on August 30, 2019, more

---

[1] After learning about an investigation by the United States Securities and Exchange Commission ("SEC") into the AnC project and other EB-5 investment projects in Vermont, the Vermont Agency of Commerce and Community Development placed a hold on the marketing of the AnC project while state regulators conducted their own investigation. In April 2015, after the DFR assumed control over the investigation, Commissioner Donegan lifted the hold. During the evidentiary hearing at sentencing, Commissioner Donegan testified that Stenger's false statements to state regulators regarding job creation were material to her decision to lift the hold.

3

than two years before the sentencing hearing—describe calls between DFR and SEC employees regarding suspicions of fraud surrounding EB-5 projects in Vermont, including the AnC project. Stenger claims the Smith Memos demonstrate that Commissioner Donegan knew about the concerns with the AnC project by April 2015 but lifted the hold nonetheless, and thus the proximate cause of the victims' losses was *her* decision to lift the hold, rather than Stenger's false statements to state regulators from January 2015.

The district court denied Stenger's petition, articulating the legal standard for *coram nobis* relief and explaining why Stenger had failed to meet that high standard. In particular, after conducting that analysis, the district court concluded:

> The defendant has failed to meet his burden of demonstrating extraordinary circumstances leading to a fundamental error in the prior criminal proceedings. The information on which he relies to justify the timing of his motion more than a year after the sentencing hearing has been in his attorneys' possession for more than three years. The issues which he seeks to raise were also raised at the sentencing hearing itself. For these reasons, the court denies the petition for writ of coram nobis.

Joint App'x at 814 (emphasis omitted). This appeal followed.

The All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A district court has authority to issue a writ of *coram nobis* in "extraordinary circumstances." *See Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and citation omitted). The writ serves as a remedy of last resort, and the Supreme Court has suggested more than once that "it is difficult to conceive of a situation in a federal criminal case today where a writ of *coram nobis* would be necessary or appropriate." *E.g.*, *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (alteration adopted) (citation omitted). To obtain *coram nobis*

4

relief, a petitioner must demonstrate that "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (internal quotation marks and citation omitted). "[W]e review *de novo* the question of whether a district judge applied the proper legal standard, but review the judge's ultimate decision to deny the writ for abuse of discretion." *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (alteration adopted) (internal quotation marks and citations omitted).

Stenger does not contend that the district court applied the incorrect legal standard for *coram nobis* relief, but rather argues that the district court abused its discretion in denying his petition because:  (1) "[t]he Smith memos detailing the SEC's specific warning to DRF [sic] officials, who reported directly to Commissioner Donegan, prove that Donegan misled the district court when she claimed that she was unaware in March 2015 that the job projections and FDA timeline submitted to state regulators in January 2015 were not reliable," Appellant's Br. at 26–27 (footnote omitted); and (2) "Commissioner Donegan's decision to lift the hold on further investment in the AnC Bio VT project was an efficient intervening cause of investor losses after April 2015," such that Stenger's false statements were not the proximate cause of those losses, *id*.

5

at 28.  We find Stenger's arguments unpersuasive.[2]

The district court did not abuse its discretion by concluding that Stenger failed to satisfy the first requirement for *coram nobis* relief, namely, that extraordinary circumstances require vacating the restitution order to achieve justice.  *Rutigliano*, 887 F.3d at 108.  Stenger's petition raises the same proximate cause argument that he made at sentencing, which the district court considered and rejected after an evidentiary hearing.  *See* Joint App'x at 354 (finding, at sentencing, that "the proximate cause link is there between the . . . false statements, the false assurances in the January letter and the decision of the agency to allow the investment to come back on the . . . market").

Stenger's contention that the Smith Memos defeat proximate cause by proving that Commissioner Donegan was aware of the SEC's suspicions regarding the AnC project and thus should not have lifted the hold on additional investments after April 2015 does not warrant *coram nobis* relief.  The district court already assumed at sentencing that the DFR's decision to allow the AnC project back onto the market was a proximate cause of investor losses and still rejected Stenger's argument that the DFR's actions superseded Stenger's conduct.  Specifically, the district

---

[2] In rejecting Stenger's claims on the merits, we assume, without deciding, that a writ of *coram nobis* is available to challenge a noncustodial component of a sentence, including a restitution order.  Although Stenger suggests that we must decide this threshold jurisdictional issue before reaching the substance of his petition, we disagree.  It is well settled that where the jurisdictional issue is statutory in nature—as it is here, under the All Writs Act—we may assume hypothetical jurisdiction and address the substance of claims that are plainly without merit.  *See Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 416 (2d Cir. 2022) ("When a jurisdictional issue is statutory in nature, we are not required to follow a strict order of operations but instead may proceed to dismiss the case on the merits rather than engage with the jurisdictional question, particularly when the jurisdictional issue is complex and the merits are straightforward."); *see also Rutigliano*, 887 F.3d at 108 ("[W]e need not decide if, or when, coram nobis might be invoked collaterally to challenge the restitution component of a criminal sentence because, even assuming [the petitioner] could do so here, her claim would necessarily fail on the merits.").

court accepted that "there were sufficient . . . red flags and warning signs that the regulatory agency and the State should not have allowed the investment to . . . be marketed again in April of 2015 and, . . . had that permission not been granted, these 36 people would not have become involved in the . . . fraudulent investment." *Id*. at 354. However, the court explained there are "multiple proximate causes" and even though DFR's lifting of the hold was a proximate cause, he was "satisfied that the proof on the proximate cause of [Stenger's] letter of January of 2015 standing alone is . . . sufficient to support a restitution award." *Id*. at 355–56. As the district court reiterated in denying the *coram nobis* petition, "[t]here were certainly other causes for the spectacular failure of the An[C] Bio investments, including the misuse of investor funds and the absence of customers or products for the proposed research facility, but the existence of these other causes does not relieve Mr. Stenger from liability under 18 U.S.C. § 3663." *Id*. at 814.

The district court's restitution analysis at sentencing was supported by case precedent; indeed, Stenger did not appeal the imposition of the restitution order based on that legal conclusion. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011) (noting that "it is common for injuries to have multiple proximate causes"); *see also United States v. Calderon*, 944 F.3d 72, 95 (2d Cir. 2019). In short, because the district court accepted, for purposes of the argument, that DFR was aware of suspicions of fraud regarding the AnC project and that its decision to lift the hold was one of the proximate causes of the losses, Stenger failed to demonstrate that any injustice would result from the district court's denial of his *coram nobis* petition that merely presents additional information supporting DFR's awareness of the same suspicions. Therefore, the district court did not abuse its discretion in denying the petition. *See Denedo*, 556 U.S. at 916 (emphasizing that the writ of *coram nobis* should only be used in "extreme cases"); *see also Foont*, 93 F.3d at 78

7

(holding that the writ of *coram nobis* should be used where the errors made were so fundamental that they render "the proceeding itself irregular and invalid" (citation omitted)).

In any event, the district court did not abuse its discretion by alternatively concluding that Stenger had not demonstrated sound reasons that excused his failure to raise these arguments regarding the Smith Memos at his sentencing. A petition for *coram nobis* must be dismissed if the district court finds "that there was not sufficient justification for the petitioner's failure to seek relief at an earlier time[.]" *Foont*, 93 F.3d at 80 (alteration adopted) (quoting *Nicks v. United States*, 955 F.2d 161, 167–68 (2d Cir. 1992)). "A district court considering the timeliness of a petition for a writ of error coram nobis must decide the issue in light of the circumstances of the individual case." *Id.* at 79. Stenger chose not to appeal the restitution order and, instead, petitioned for this writ one year later. However, as the district court noted and Stenger concedes, the Smith Memos were in his attorneys' possession for more than two years before his sentencing. Thus, at the evidentiary hearing, Stenger had the opportunity to use these memos to cross-examine Commissioner Donegan regarding her testimony about lifting the hold, or otherwise bring those memos to the district court's attention. Stenger failed to do so. That Stenger may not have located the Smith Memos in the discovery in time for the evidentiary hearing is not sufficient to excuse his failure to use that evidence then. Allowing Stenger to seek *coram nobis* despite his unjustified delays would infringe upon the government's interest in the finality of convictions. *See id.* at 80. The district court, therefore, did not abuse its discretion in finding that Stenger's failure to have previously used this evidence separately precluded *coram nobis* relief.

8

\*     \*     \*

We have considered Stenger's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court